367 S.E.2d 760

**FOURCO GLASS CO., a Corp., Petitioner Below, Appellee,**

v.

**STATE of West Virginia HUMAN RIGHTS COMMISSION and Charles Washington, Jr., Respondents Below, Appellants.**

No. 17981.

Supreme Court of Appeals of West Virginia.

March 31, 1988.

**292**

Antoinette Eates, Asst. Atty. Gen., Charleston, for State of W.Va. HRC Com'n and Charles Washington, Jr.

Charles G. Johnson, Clarksburg, for Fourco Glass Co., a Corp.

PER CURIAM:

This is an appeal by the West Virginia Human Rights Commission (Commission) and Charles Washington from a final order, dated November 19, 1986, entered in the Circuit Court of Taylor County, reversing and setting aside the Commission's order of July 29, 1983, which found that the Fourco Glass Company (Fourco) had unlawfully discriminated against Mr. Washington, a black male, by requiring him to relinquish his seniority rights when he took a volun-

tary layoff in March, 1977, and not thereafter recalling him to employment until February, 1978. We reverse the circuit court.

Charles R. Washington went to work for Fourco on April 21, 1968. At that time, Fourco's total work force totalled about 150 employees, and according to Mr. Washington, he was the only black hourly employee employed by Fourco. When reductions in force became necessary, Fourco had two procedures for laying off hourly employees. The collective bargaining agreement provided that reductions in force would be accomplished based upon department seniority. Additionally, Fourco would voluntarily lay off hourly employees not normally subject to the layoff at their request in reverse order of their seniority. There was no written policy with regard to these voluntary layoffs nor were they covered in the collective bargaining agreement.

Generally, laid off employees were called back by seniority, but there were two exceptions to this. Employees with special skills might be called back earlier. Additionally, voluntarily laid off employees would not be called back until they had notified Fourco that they were ready to return, and then the name of the laid off employee would be placed on the recall list in order of seniority.

Mr. Washington's request for voluntary layoff was granted effective March 21, 1977. As a prerequisite to the granting of a voluntary layoff, Mr. Washington was required to sign a statement which said: "I, Charles R. Washington, Jr., have requested and been granted a voluntary layoff. I fully understand recall will be at company discretion and will not be based on seniority nor any other contractual clause." Mr. Washington was the only employee of Fourco ever asked to sign such a statement in order to obtain a voluntary layoff. The effect of this language was that Mr. Washington would not be entitled to recall to employment except at the will and discretion of Fourco, regardless of his accrued seniority.

Other employees of Fourco testified that this letter did not affect Mr. Washington's status and that if Mr. Washington had made a request for recall in keeping with Fourco's recall policy on voluntarily laid off employees, he would have been placed on the recall list and called back in order of seniority. Despite this, no one informed Mr. Washington that this letter did not affect his recall rights as an employee on voluntary recall. One of these employees stated as this letter of waiver was placed in Mr. Washington's file, "I'll get his black ass."

No employees on layoff status during the spring of 1977 were called back until August 22, 1977, when two white males, junior in seniority to Mr. Washington, were recalled. There were no further recalls of laid off employees until February 13, 1978. At least by August of 1977, Mr. Washington had expressed his desire to return to work. On September 28, 1977, Fourco withdrew the letter signed by Mr. Washington, thereby allowing him to be subject to recall on the basis of seniority. Mr. Washington was recalled to work in February, 1978, but he voluntarily extended his layoff until March 6, 1978.

The Commission ruled that Fourco unlawfully discriminated against Mr. Washington on the basis of race in violation of *W.Va.Code*, 5–11–9 [1977] and ordered Fourco to pay Mr. Washington back pay, reasonable attorney fees, and a sum of $1,000 for mental anguish and humiliation. The Circuit Court of Taylor County found that the Commission erred in the facts found by it and ruled that Mr. Washington had failed to prove by a preponderance of the evidence that the reasons given by Fourco for not calling him back to work in August, 1977, were a pretext for illegal discrimination.

*W.Va.Code*, 5–11–9 [1977], places the burden on complainants to show that they were victims of illegal discrimination. In general, a *prima facie* case of discrimination against a member of a protected class can be proven by direct or circumstantial evidence, or by inferential evidence, or by a combination of evidence. *McDonnell*

*Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* analysis of the evidence was accepted by this Court in *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983). In accepting the *McDonnell Douglas* rationale, this Court stated in Syllabus Point 3 of *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission:*

In an action to redress unlawful discriminatory practices in employment and access to "places of public accommodations" under the West Virginia Human Rights Act, as amended, *W.Va.Code*, 5–11–1, et. seq., the burden is on the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection the respondent continued to accept the qualifications of similarly qualified persons. If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

In Syllabus Point 2 of *State ex rel. State of West Virginia Human Rights Commission v. Logan–Mingo Area Mental Health Agency*, 174 W.Va. 711, 329 S.E.2d 77 (1985), this Court held:

"A complainant in a disparate treatment, discriminatory discharge case brought under the West Virginia Human Rights Act, Code, 5–11–1, et. seq., may meet the initial prima facie burden by proving by a preponderance of the evi-

dence, (1) that the complainant is a member of a group protected by the Act; (2) that the complainant was discharged, or forced to resign, from employment; and (3) that a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct."

Although the present case is not a case of discriminatory discharge from employment, it does involve an allegation of unequal or disparate treatment between a member of the protected class and others, and this prima facie test is a very useful and workable test for unequal treatment for employees.

 In the present case, the Commission correctly found that Mr. Washington made an initial *prima facie* showing that Fourco discriminated against him on the basis of race. He demonstrated that: (1) he was a black male; (2) he was the only employee asked to sign a letter waiving recall rights to obtain a voluntary layoff; (3) he articulated a desire to return to a job for which he was fully qualified at the time of the recall of employees on August 22, 1977; and, (4) he was not recalled despite his willingness and ability to return to work.

■ Once the complainant has established a *prima facie* case of discrimination, the burden of proof shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. In this regard, the Commission found that Fourco articulated legitimate nondiscriminatory reasons for its failure to recall Mr. Washington because the waiver letter was the result of the plant manager's inexperience and because Mr. Washington was the first employee recalled after he indicated his desire to return to work in December, 1977. Once the employer has met its burden of proof, the complainant must prove by a preponderance of the evidence that he was a victim of unlawful discrimination. To do so, the complainant must demonstrate that the reason proffered by the employer is untrue or not the true motivation for the discharge. See, *State ex rel. State of West Virginia Human Rights Commission v. Logan–Mingo Area Mental Health Agency, supra.*

■ In the present case, Fourco departed from an unwritten procedure for granting voluntary layoffs that had been in place for several years. Mr. Washington was the only black hourly employee at Fourco and the only employee ever required to sign a statement waiving his seniority rights to recall in order to be granted a voluntary layoff. Such evidence of disparate treatment and departure from normal business practice, along with direct evidence of discrimination manifested in the statement, "I'll get his black ass," leads us to the inevitable conclusion that Fourco's reasons for requiring Mr. Washington to waive his seniority rights were pretextual. Each one of the Commission's findings with regard to pretext is supported by substantial evidence in the record. Consequently, the Circuit Court of Taylor County was incorrect and erred in reversing the order of the Commission.

For the foregoing reasons, the final order of the Circuit Court of Taylor County is hereby reversed and the final order of the West Virginia Human Rights Commission reinstated.

Reversed; final order of Human Rights Commission reinstated.