457 S.E.2d 152

**Mary Jane BAREFOOT, Administratrix of the Estate of Grace Lambert, Plaintiff Below, Appellee,**

**v.**

**SUNDALE NURSING HOME, Jerry Bair, and Nancy Edgell, Defendants Below.**

**Sundale Nursing Home, Appellant.**

**No. 22165.**

Supreme Court of Appeals of West Virginia.

Submitted Upon Rehearing April 4, 1995.

Decided April 13, 1995.

479

Calvin Willie Wood, Fairmont, for appellee.

Richard M. Yurko, Jr., Jill Oliverio, Steptoe & Johnson, Clarksburg, for appellant.

CLECKLEY, Justice:

This case was originally submitted for decision at the September, 1994, term of this Court, and an opinion was filed on December 8, 1994. Thereafter, the plaintiff below and appellee herein, Mary Jane Barefoot, Administratrix of the Estate of Grace Lambert, petitioned for a rehearing and said petition was granted. On April 4, 1995, this case was reheard and the Court, thereafter, withdrew the original opinion. We now issue the following opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The defendant below and appellant herein, Sundale Nursing Home, appeals the decision of the Circuit Court of Monongalia County upholding a jury verdict awarding Mary Jane Barefoot, Administratrix of the Estate of Grace Lambert, $32,000 because of Sundale's alleged discriminatory discharge of Ms. Lambert.[1] On appeal, the defendant asserts several assignments of error including the plaintiff's failure to establish a *prima facie* case showing discrimination or, in the alternative, the plaintiff's failure to prove the defendant's business excuse was a pretext for discriminatory purposes.

On June 14, 1991, Theresa L. Ratcliffe, a nursing assistant employed by Sundale, reported Ms. Lambert (the decedent), another nursing assistant employee, struck the patient with whom they both were working, causing a skin tear on his arm. The matter was reported to Nancy Edgell, the Director of Nursing.[2] After informing Jerry Bair, Sundale's administrator, and other adminis-

---

1. Ms. Lambert filed this suit about six months after her discharge from Sundale. Upon Ms. Lambert's death, Ms. Barefoot, her daughter and the administratrix of her estate, was substituted as plaintiff. Under W.Va.Code, 55–7–8a(b) (1959), when an action has been filed by an injured party and the injured party subsequently dies, the action "may be revived in favor of the personal representative of the injured party[.]"

2. Ms. Ratcliffe moved to Florida and did not testify at trial. According to her notarized statement introduced at trial, Ms. Ratcliffe saw Ms. Lambert strike the patient.

trators, Ms. Edgell interviewed Ms. Ratcliffe, the floor nurse who examined the patient, and Ms. Lambert. Ms. Edgell also reviewed the patient's medical records, visited the patient, and observed the skin tear on his arm. According to Ms. Edgell, Ms. Lambert said "she didn't cause the skin tear but she did not refute the fact that she had struck the resident." In an unrelated matter before a State Employment Security Administrative Law Judge, Ms. Lambert gave the following testimony:

> " 'I did not put the skin tear on the man and all I did was tap him on the top. He had his fist like this. So, this is the way that he comes into my stomach; and I just tapped him on the top of the hand. I did not hurt the man. He never even said "ouch" and that was just to calm him down from hitting me the fifth time in the stomach and if I had of put a skin tear on him, I would have gone straight to the nurse but I did not put a skin tear on the man.' "

According to the defendant's personnel manual, the first offense penalty for "[a]buse of resident, use of obscene or abusive language, striking, threatening, or harassing a resident" is discharge. Ms. Lambert's personnel file contained a receipt acknowledging that Ms. Lambert received Sundale's personnel manual and read and understood Sundale's personnel policies. Following an investigation of the alleged incident, Sundale dismissed Ms. Lambert for striking a resident.

Following her June 14, 1991, dismissal, Ms. Lambert filed suit on January 24, 1992, alleging she was discharged because she was female, over forty years old, and a Native American. On January 31, 1992, while this suit was pending, Ms. Lambert died of cardi-

ac arrest[3]; Ms. Barefoot was substituted as plaintiff.[4]

At trial, the plaintiff presented evidence supporting a *prima facie* case of both disparate treatment and disparate impact by the defendant. The plaintiff also attempted to establish that the decedent's discharge was discriminatory by presenting evidence that other employees who had struck patients were not fired and the defendant fired all five of its Native American employees within a six- to eight-month period.

After the jury returned a verdict against Sundale[5] awarding the plaintiff $32,000, the circuit court denied the defendant's motion for judgment notwithstanding the verdict or, in the alternative, granting a new trial. Sundale then appealed to this Court.

## II.

## SUFFICIENCY OF EVIDENCE

### A. Standard of Review

Sundale challenges the sufficiency of the evidence to support the verdict and judgment entered in this case. Essentially, Sundale argues it was entitled to judgment as a matter of law for failure of the plaintiff to meet her burden of proof at trial.

Rule 50(b) of the West Virginia Rules of Civil Procedure allows a defendant to move for a judgment notwithstanding the verdict if, with respect to an issue essential to a plaintiff's case, there exists no legally sufficient evidentiary basis for the jury to find in favor of the plaintiff. 5A James W. Moore, *Moore's Federal Practice* ¶ 50.08 at 50–76 (2nd ed. 1994).[6] Under this rule, a

---

3. The record contains testimony that before Ms. Lambert tapped or struck the resident, he punched her several times in the lower abdomen, which was alleged to have caused the pain that led to Ms. Lambert's final hospitalization. However, no workers' compensation claim was filed and no private cause of action exists under the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678, for an allegedly unsafe working condition. *See Handley v. Union Carbide Corp.*, 804 F.2d 265, 266 (4th Cir.1986).

4. Hereafter, Ms. Lambert will be referred to as the decedent and Ms. Barefoot will be referred to as the plaintiff.

5. At the conclusion of the plaintiff's evidence, a directed verdict was granted on behalf of Ms. Edgell and Mr. Bair.

6. The standard for granting a judgment notwithstanding the verdict is the same as for a directed verdict, i.e., after considering the evidence in the light most favorable to the nonmovant, only one reasonable verdict is possible. *Huffman v. Appalachian Power Co.*, 187 W.Va. 1, 415 S.E.2d 145

circuit court may enter a favorable ruling for the movant if, after examining the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant, it determines the evidence could lead a reasonable person to only one conclusion favorable to the movant. *Powell v. Time Ins. Co.*, 181 W.Va. 289, 382 S.E.2d 342 (1989).

■ If there is reasonable doubt, that is evidence of such quality and weight that reasonable and fair minded jurors might reach a different conclusion, then the motion should be denied. In Syllabus Point 1 of *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994), this Court stated:

"In reviewing a trial court's ruling on a motion for a judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a motion for a judgment notwithstanding the, verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant."

Thus, a circuit court's denial of a motion under Rule 50 of the Rules of Civil Procedure will be reversed only if the facts and inferences point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not reach a verdict against the movant. In performing this analysis, the credibility of the witnesses will not be considered, conflicts in testimony will not be resolved, and the weight of the evidence will not be evaluated. In other words, we will reverse the circuit court's ruling denying such a motion if, after scrutinizing the proof and inferences derivable therefrom in the light most hospitable to the plaintiff, we determine that a reasonable factfinder could have reached but one conclusion: Sundale was entitled to judgment. A denial of a motion for j.n.o.v.[7] is reviewed *de novo*, which means the same stringent decisional standards that control circuit courts are used.[8] While our review of this motion is plenary, it also is circumscribed because we must review the evidence in the light most favorable to the plaintiff. *See Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir.1995). Against this backdrop, we examine the claim that the circuit court improperly denied the defendant's motion below.

### B. *Disparate Treatment*

■ We have consistently held that cases brought under the West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.*, are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise. *E.g., West Va. University v. Decker*, 191 W.Va. 567, 447 S.E.2d 259 (1994); *Conaway v. Eastern Associated Coal*

(1991); Fleming James, Jr., Geoffrey C. Hazard, Jr., & John Leubsdorf, *Civil Procedure* § 7.30 at 406–07 (4th ed. 1992). Under this standard, a judgment notwithstanding the verdict should be denied if the evidence is conflicting or is insufficient to establish the movant's case.

7. The abbreviation stands for *judgment non obstante verdicto*. In federal courts, j.n.o.v. is also known by another label. Amendments to Rule 50 of the Federal Rules of Civil Procedure abandoned the terms "directed verdict" and "judgment n.o.v.," which were commonly associated with the former rule, in favor of the phrase "judgment as a matter of law." *See generally* Fed.R.Civ.P. 50 advisory committee's note. The amendment did not, however, affect either the standard by which a trial court reviews motions under the rule or the standard by which an appellate court reviews a trial court's ruling.

8. In Syllabus Point 6 of *McClung v. Marion County Commission*, 178 W.Va. 444, 360 S.E.2d 221 (1987), this Court stated:

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syl. pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984)."

*Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986).[9] Under the burden-shifting *McDonnell Douglas–Burdine* framework for analyzing pretext claims, a plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *See St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 416 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 214–15 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677–78 (1973), *receded from by Hazen Paper Co. v. Biggins,* — U.S. —, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action. *See St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2747, 125 L.Ed.2d at 416 (employer must produce evidence of a nondiscriminatory reason to rebut the presumption of discrimination created by the *prima facie* case). *See also Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–78. Finally, the plaintiff then is accorded an opportunity to demonstrate that either age, gender, or ancestry was a determinative factor in the defendant's employment decision or the defendant's articulated rationale was merely a pretext for discrimination. *See St. Mary's Honor Cen-*

*ter,* — U.S. at —, 113 S.Ct. at 2747–48, 125 L.Ed.2d at 416; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215; *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825, 36 L.Ed.2d at 678–79.[10] Pretext may be shown through direct or circumstantial evidence of falsity or discrimination. The plaintiff's failure to come forth with evidence rebutting the defendant's explanation may entitle the defendant to judgment. *See Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95, 67 L.Ed.2d at 216–17.

■ As a threshold matter, the defendant argues this Court should reverse the circuit court's decision because the plaintiff did not meet her initial burden of proving a *prima facie* case of gender, ancestry, or age discrimination. Under one accepted view, we could decide this appeal without resolving whether the plaintiff proved a *prima facie* case. "Where the defendant has done everything that would be required of [it] ... if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983).[11] *See also E.E.O.C. v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2nd Cir.1994); *Bhaya v. Westinghouse Electric Corp.,* 832 F.2d 258, 260 (3rd Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *E.E.O.C. v. Century Broadcasting Corp.,* 957 F.2d 1446, 1455 (7th Cir.1992). Here, Sun-

---

**9.** Where, however, there are substantive distinctions between the language used by the two statutes, we have inferred a State legislative intent to diverge from the federal law and have ruled accordingly. *E.g., Chico Dairy Co. v. W.Va. Human Rights Comm'n,* 181 W.Va. 238, 382 S.E.2d 75 (1989); *W.Va. Human Rights Comm'n v. United Transp. Union, Local 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981).

**10.** We emphasize this analysis is not necessarily a three-step minuet for ordering the proof at trial. Rather, it provides a framework for analyzing the evidence and facilitating a trial court's rulings on motions to dismiss and for directed verdicts. As a practical matter, the plaintiff's case-in-chief will often include evidence on the *prima facie* case, the defendant's explanation for the adverse employment action, and pretext. *See* note 20, *infra.*

**11.** In *Aikens,* the parties on appeal argued whether the district judge, ruling after a bench trial, used the wrong elements for a *prima facie*

case of discriminatory failure to promote. Because the case "was fully tried on the merits," the Supreme Court thought it "surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a *prima facie* case.... [B]y framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non."* 460 U.S. at 714, 103 S.Ct. at 1481, 75 L.Ed.2d at 409. (Footnote omitted).

We concur with the United States Supreme Court's standards and hold that when a trial court has overruled a defendant's motion to direct a verdict for failure to establish a *prima facie* case and the defendant presented evidence sufficient for the trier of fact to make an adequate ruling on the merits, the question of whether the plaintiff made a *prima facie* case is not a necessary consideration for the disposition of the case on appeal.

**484**

dale failed to persuade the circuit court to grant the motion for a directed verdict at the close of the plaintiff's case-in-chief. The defendant then responded to the plaintiff's proof by offering evidence of its nondiscriminatory reasons for the dismissal of the decedent. As a result, we may affirm if there existed sufficient evidence for a jury to find the decedent's termination discriminatory within the meaning of the West Virginia Human Rights Act. *See Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481, 75 L.Ed.2d at 410.

■ Because the jury found the plaintiff bore her burden, we can reverse the circuit court only if we find the jury's decision was unsupported by the evidence. *Mildred L.M. v. John O.F., supra.* For reasons expressed below, we believe the plaintiff did present a legally sufficient evidentiary basis from which a reasonable jury could find the defendant discriminated against the decedent under the West Virginia Human Rights Act.

*Aikens* notwithstanding, an alternative disposition could turn on a plaintiff's success or failure in proving the *prima facie* case. If the plaintiff failed in that effort, in the sense that no reasonable jury could find a *prima facie* case, then we would have to reverse because the defendant would necessarily have some legitimate explanation for making the adverse employment decision. Moreover, if we conclude that the plaintiff did offer sufficient evidence from which a reasonable jury could find a *prima facie* case, then, as explained below, the circuit court as a matter of law had to submit the case to a jury, and we, therefore, have to affirm the jury verdict. For these reasons, and to clarify our case law on both the *prima facie* case and the proof of pretext, we will assess the evidence in this case under the traditional *McDonnell Douglas–Conaway* framework.

■ At the outset, we note some confusion about the *prima facie* case may have developed from the third prong of the analysis we set forth in *Conaway* that "[b]ut for the plaintiff's protected status, the adverse decision would not have been made." 178 W.Va. at 170, 358 S.E.2d at 429. Use of the "but for" language in that test may have been unfortunate, at least if it connotes that a plaintiff must establish anything more than an inference of discrimination to make out a *prima facie* case.[12] But the *Conaway* decision itself disavowed any desire to require more: "What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." 178 W.Va. at 170–71, 358 S.E.2d at 429–30. Moreover, the majority in *Conaway* expressly noted it was not overruling our decisions in either *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983) (applying the federal test formulated in *McDonnell Douglas, supra*), or *State ex rel. State of West Virginia Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.,* 174 W.Va. 711, 329 S.E.2d 77 (1985) (applying a variation of the *McDonnell Douglas* standard). Rather, *Conaway* said its general test was inclusive of the analyses in those cases. To further clarify, we now hold the "but for" test of discriminatory motive in *Conaway* is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination.

■ When *Conaway* is read in this context, it becomes clear the plaintiff in this case offered a *prima facie* case; in fact, depend-

---

**12.** There is precedent in retaliation cases for using a formula for the *prima facie* case similar to *Conaway's. E.g., Jennings v. Tinley Park Community Consol. School Dist. No. 146,* 864 F.2d 1368 (7th Cir.1988); *E.E.O.C. v. Crown Zellerbach Corp.,* 720 F.2d 1008 (9th Cir.1983). In that context, courts describe the *prima facie* showing as evidence that the plaintiff engaged in protected activity, that the plaintiff suffered an adverse employment decision, and that there was a causal link between the protected activity and the adverse decision. As we have said, that link "can be proven by direct or circumstantial evidence, or by *inferential* evidence, or by a combination of evidence." *Fourco Glass Co. v. State Human Rights Comm'n,* 179 W.Va. 291, 293, 367 S.E.2d 760, 762 (1988). (Emphasis added). In any event, these retaliation cases reinforce the point: a plaintiff's burden in making a *prima facie* case is merely to establish an inference that a discriminatory motive entered into the decision.

ing upon how one wants to break down the facts, she may have offered two. The plaintiff alleged a discriminatory discharge and adduced evidence that: (1) the decedent was a member of a protected class (Native American) [13]; (2) the decedent provided competent, capable, and loyal service to her employer; (3) the decedent was discharged; and (4) the decedent was replaced by someone not of her protected class. These facts, standing alone, create an inference of discrimination. If the decision is not explained, we would suspect the employer had an illicit motive; a fair and rational employer does not fire an employee who is performing adequately and then hire someone totally new to replace the discharged worker. Of course, the employer might have a rational explanation for its action. When that explanation is offered, a function of the *prima facie* case is served; it is designed to allow a plaintiff with only minimal facts to smoke out a defendant—who is in control of most of the facts—and force it to come forward with some explanation for its action. *E.g., Conaway, supra; Burdine, supra.* In this case, the plaintiff supported the skeletal *prima facie* case with evidence that the employer also purged all other members of the decedent's class from its workforce over a period of six to eight months. Thus viewed, the plaintiff clearly established an inference of discrimination, and the circuit court was correct in requiring the defendant to offer a legitimate, nondiscriminatory reason for its discharge decision or face a directed verdict.

██ The defendant responded. It contended the decedent was terminated because she hit a patient at the nursing home. Undoubtedly, that is (if believed by the jury) a legitimate, nondiscriminatory reason. But that explanation also gave rise to a second possible *prima facie* case [14] when the plaintiff offered evidence that other employees who were not members of the decedent's protected class hit patients and were not discharged. This meets the *prima facie* case outlined in Syllabus Point 2, in part, of *Logan–Mingo Mental Health Agency, supra*, which *Conaway* expressly reaffirmed: [15]

"A complainant in a disparate treatment, discriminatory discharge case ... may meet the initial *prima facie* burden by proving, by a preponderance of the evidence,[16] (1) that the complainant is a mem-

---

13. For purposes of simplicity and because racial or ancestral discrimination appears to be the plaintiff's strongest claim, we will limit our analysis to this ground as the basis for the alleged discrimination.

14. The ensuing discussion in the text could also be analyzed as proof of pretext. *See, e.g., McDonnell Douglas, supra.* Whether the evidence is assessed as a separate *prima facie* case or as pretext does not really matter. Either characterization enlightens what is the only real issue: whether the plaintiff sustained her burden of proving that decedent's race or ancestry entered into the defendant's decision to discharge her.

15. Indeed, *Conaway* described the *Logan–Mingo* formula as "a very useful, workable test for unequal treatment of employees." 178 W.Va. at 171 n. 16, 358 S.E.2d at 430 n. 16.

16. This part of the *Logan–Mingo* analysis, which requires a plaintiff to prove the *prima facie* case by a preponderance of the evidence, could be misleading. As described above, whether a plaintiff has established a *prima facie* case is critical on motions to dismiss or for directed verdicts. A circuit court may not grant a defendant's motion to dismiss if the plaintiff has alleged the elements of a *prima facie* case (assuming there are no other defects in the pleadings).

Nor may a circuit court grant a defendant's motion for a directed verdict if a reasonable jury could find the existence of a *prima facie* case. Thus, in ruling on those motions, the circuit court would not be assessing the evidence by a preponderance of the evidence standard.

On the other hand, in a bench trial, the circuit could use the *Logan–Mingo* formula, as written, to analyze the facts. In addition, to assist a jury in its analysis of the facts, a circuit court could instruct the jury by explaining the *Conaway* three-step analysis (*prima facie* case—legitimate, nondiscriminatory reason—pretext). In that context, the circuit court's instructions would appropriately require the plaintiff to prove the *prima facie* elements by a preponderance of the evidence. Alternatively, the circuit court could simply instruct the jury that the plaintiff's burden is to prove by a preponderance of the evidence that the alleged illicit motive contributed to the employer's adverse action against the plaintiff. If that is proved, the plaintiff must prevail unless the defendant can show by a preponderance that the same decision would have been made in the absence of the discriminatory motive. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), *superseded by* 1991 Civil Rights Act. *See Adams v. Nolan*, 962 F.2d 791 (8th Cir.1992); *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992); *Hodgdon*

ber of a group protected by the Act; (2) that the complainant was discharged, or forced to resign, from employment; and (3) that a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct." *Accord McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). This *prima facie* burden is precisely what the plaintiff offered in this case.

■ In an attempt to rebut the plaintiff's *prima facie* case, the defendant responded to the plaintiff's evidence of inconsistent treatment of comparison employees by asserting the plaintiff's evidence was not only inconclusive, but the comparison employees were actually members of the decedent's protected class. The first comparison employee was a black female—not a Native American. Unless a comparison employee and a plaintiff share the same disputed characteristics, the comparison employee cannot be classified as a member of a plaintiff's class for purposes of rebutting prima facie evidence of disparate treatment. Therefore, so long as the employee in this case was not a Native American, it is irrelevant whether she was black, white, yellow, or purple.

The defendant also claims the second comparison employee, Ms. Edgell, was a member of a protected class because she testified, without substantiation, that she was of "Native American heritage" from her grandmother's side "back about six generations." It is not clear whether that is six generations back from her grandmother or from Ms. Edgell. Here, the defendant fails to consider that an employer could discriminate against an individual who is obviously and predominantly a member of a racial minority, but not discriminate against one who is somewhere between 1/64 and 1/256 minority blood (depending upon where those six generations start). Proof that an employer disciplined the former but not the latter when both engaged in similar conduct is *prima facie* evidence of racial or ancestral discrimination;

*v. Mt. Mansfield Co., Inc.*, 160 Vt. 150, 624 A.2d 1122 (1992).

17. Having found the plaintiff has established a *prima facie* case and Sundale has offered rebuttal

unless it is explained, such disparate treatment violates the Human Rights Act.[17]

■ Moreover, the jury may very well have disbelieved Ms. Edgell that she, too, was of Native American ancestry. Certainly, the defendant offered no evidence to support Ms. Edgell's ancestral claim. Although we cannot tell from the record, the jury also may have taken into account the witnesses' (*i.e.*, Ms. Barefoot's and Ms. Edgell's) physical appearances. The record fails to justify a conclusion that no reasonable jury could disbelieve Ms. Edgell.

The record also fails to warrant the conclusion that no reasonable jury could conclude there had been a discriminatory discharge. One could reasonably argue from the record (which is all it takes to sustain a jury verdict) that: Ms. Edgell was not believable; the decedent did not abuse the patient by "tapping" him; the decedent acted in necessary self-defense; the incident was conveniently (and pretextually) blown way out of proportion; the decedent was a very conscientious and loyal employee; an employee with the decedent's work history would normally be given the benefit of a doubt; the defendant failed to meaningfully investigate the charge and merely seized the opportunity to get rid of the decedent; the defendant's failure to discipline others for similar conduct evidenced pretext; and the defendant was on a mission to purge Native Americans from its workforce.

■ This line of reasoning does not follow inexorably from the record, but it does follow reasonably. And under the appropriate standard of review that is enough. It must be remembered the question for this Court is whether the record evidence reasonably supports an inference that Sundale did not act for nondiscriminatory reasons and not whether the evidence *necessarily* leads to the conclusion that Sundale did act for dis-

evidence, we must now examine the record for evidence of inconsistencies or anomalies that could support an inference that Sundale did not act for its stated reasons.

criminatory reasons.[18] On the other hand, the plaintiff need not show more than that the defendant's articulated reasons were implausible and, thus, pretextual.[19] After the employer has articulated a nondiscriminatory justification for its employment decision, to defeat a motion for a directed verdict, a plaintiff need not show more than the articulated reasons were implausible and, thus, pretextual. A finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and, thus, permits the ultimate inference of discrimination. *See DeMarco v. Holy Cross High School*, 4 F.3d 166, 170 (2nd Cir.1993) ("[p]roof that the employer has provided a false reason for its action permits the finder of fact to determine that the defendant's actions were motivated by an improper discriminatory intent, but does not compel such a finding"), *citing St. Mary's Honor Center*, — U.S. at —, 113 S.Ct. at 2748–49, 125 L.Ed.2d at 417–19.[20]

18. Indeed, the plaintiff is not required to show that the defendant's proffered reasons were false or played no role in the termination, but only that they were not the only reasons and the prohibited factor was at least one of the "motivating" reasons. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion) (where employer shows a legitimate motive, the plaintiff need not show the prohibited factor was the sole or principal reason or the "true reason").

19. A plaintiff who makes a *prima facie* case may defeat a judgment as a matter of law by either, through circumstantial or direct evidence, (1) discrediting the proffered reasons or (2) adducing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir.1994). Although the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing "the employer's proffered explanation is unworthy of credence," *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217, as we stated above, it may often be carried by reliance on the evidence comprising the *prima facie* case, without more. *See St. Mary's Honor Center*, — U.S. at —, 113 S.Ct. at 2749, 125 L.Ed.2d at 419. Thus, unless the employer comes forward with evidence of a *dispositive*, nondiscriminatory reason as to which there is no real dispute and "which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2nd Cir.1995).

20. There is another reason why the this case cannot be decided on a j.n.o.v. motion. Once a *prima facie* case is established under *McDonnell Douglas*, the burden of production passes to the defendant. Under *St. Mary's Honor Center, supra*, a *prima facie* case creates a presumption of discrimination in favor of a plaintiff and, thus, a plaintiff is entitled to the benefit of Rule 301 of the West Virginia Rules of Evidence (the federal rule is identical).

Under Rule 301, once a presumption enters the case, the case cannot as a matter of law be dismissed. Rather, it is incumbent on a circuit court to submit the case to the trier of fact for final resolution. The legislative history of Rule 301 supports this interpretation. The final Conference Report explaining Rule 301 states: "Under the Senate amendment, a presumption is sufficient to get a party past an adverse party's motion to dismiss made at the end of his case-in-chief." Eric D. Green & Charles R. Nesson, *Federal Rules of Evidence* at 42 (1994). Properly interpreted, Rule 301 precludes a circuit court from granting a judgment as a matter of law against the party the presumption favors. *See* I Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 3–2(B) at 174 (3rd ed. 1994).

To this extent, the parties appear to agree. The defendant argues, however, that once it rebutted the presumption, it was incumbent on the plaintiff to offer independent evidence showing intentional discrimination. In effect, the defendant argues that, once the presumption was met by defendant's evidence of a nondiscriminatory explanation for the adverse treatment of the decedent, the presumption lost its evidentiary force and, for the plaintiff to win, she must point to other record evidence to satisfy her ultimate burden of persuasion. What is overlooked by the defendant is that intentional discrimination could be inferred from the basic facts that gave rise to the *McDonnell Douglas* presumption. Congress, in its discussion of Rule 301, suggested "the court may ... instruct the jury that it may infer the existence of the presumed fact from proof of the basic facts." Eric D. Green & Charles R. Nesson, *Federal Rules of Evidence* at 42. The Supreme Court in *Burdine* made the same point:

"In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence,

When the evidence is read in the light most favorable to the plaintiff, a jury could reasonably find that Sundale terminated the decedent not because of the alleged assault, but rather because of her age, gender, and/or ancestry. The plaintiff's attack on Sundale's stated reasons for the discharge leaves this Court with the classical and paradigmatic case in which each party has produced testimony and evidence that conflicts on the ultimate issue—whether the decedent was discharged for her abusive conduct or for other factors violative of the Human Rights Act. This resulting conflict must be resolved by a jury and not by a circuit court as a matter of law. Indeed, reversing this case violates the limitations imposed on judges by the right to trial by jury in Section 13 of Article III of the West Virginia Constitution. *Zambelli v. House*, 188 W.Va. 423, 424 S.E.2d 768 (1992) (error to grant motion in light of multitude of factual issues which require jury resolution).

## C. *Disparate Impact*

In addition to alleging intentional discrimination, the plaintiff advanced a disparate impact claim based on evidence that over a period of six to eight months, the defendant fired all five of its Native American employees, beginning with the decedent. Recently, in Syllabus Point 1, in part, of *West Virginia University v. Decker, supra*, we stated:

"In view of the language and purpose of the Human Rights Act, *W.Va.Code*[,] 5–11–1 [1967] *et seq.*, as it now stands, and the language of this Court in *Guyan Valley Hospital, Inc. v. West Virginia Human*

*Rights Comm'n*, 181 W.Va. 251, 382 S.E.2d 88 (1989), we now hold that there is a cause of action for 'disparate impact' that applies equally to all claims arising under *W.Va.Code*, 5–11–1 [1967] *et seq.*[.]"

"Unlike disparate treatment analysis, which turns on illegal motive, disparate impact turns on discriminatory *effect*." *West Va. Univ. v. Decker*, 191 W.Va. at 572, 447 S.E.2d at 264. (Emphasis in original).

■ In *Decker*, we noted that the 1991 amendments to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, shifted the burden of production and persuasion to the employer to show that an employment practice, which had a disproportionate adverse impact on a protected trait, is "both 'job related' and 'consistent with business necessity'. [Footnote omitted.]" 191 W.Va. at 572, 447 S.E.2d at 264. Based on the 1991 amendments, we abandoned the disparate impact test of *Guyan Valley, supra* and in Syllabus Point 3 of *Decker* held:

"In proving a prima facie case of disparate impact under the Human Rights Act, *W.Va.Code*[,] 5–11–1 [1967,] *et seq.*, the plaintiff bears the burden of (1) demonstrating that the employer uses a particular employment practice or policy and (2) establishing that such particular employment practice or policy causes a disparate impact on a class protected by the Human Rights Act. The employer then must prove that the practice is 'job related' and 'consistent with business necessity.' If the

combined with effective cross-examination of the defendant, will suffice to discredit the explanation." 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10, 67 L.Ed.2d at 216 n. 10.

Finally, the majority's opinion in *St. Mary's Honor Center*, —— U.S. at ——, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–19, elaborated:

"The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that upon such rejection, '[n]o additional proof of discrimination is *required*[.]'" (Emphasis in original; citation and footnote omitted).

We believe the existence of the presumption reviewed in light of the totality of circumstances in this case, even after being met by a legitimate, nondiscriminatory reason, precluded the circuit court from entering a directed verdict and "'no additional proof of discrimination ... [was] *required*'" to justify the jury's verdict for the plaintiff. *St. Mary's Honor Center*, —— U.S. at ——, 113 S.Ct. at 2749, 125 L.Ed.2d at 419. (Emphasis in original; citation omitted). *See also Sempier v. Johnson & Higgins*, 45 F.3d 724, 730–31 (3rd Cir.1995) ("[r]ejection of the employer's nondiscriminatory explanation does not compel a verdict in favor of the employee, but it permits the trier of fact to infer discrimination and find for the plaintiff on the basis of the allegations of discrimination in her prima facie case").

employer proves business necessity, the plaintiff may rebut the employer's defense by showing that a less burdensome alternative practice exists which the employer refuses to adopt. Such a showing would be evidence that employer's policy is a 'pretext' for discrimination."

In this case, the plaintiff attempted to show the alleged discriminatory effect of the defendant's practice or policy through a witness who testified about the decedent's discharge and three other discharges, two discharges allegedly for union activity and the witness's own discharge allegedly for patient abuse. The witness acknowledged that only one of the persons allegedly discharged for union activity was a Native American and did not provide any information about the fifth discharge. The plaintiff did not present any evidence comparing the discharge rate of the Native Americans to the general discharge rate of non-Native Americans.

The defendant's administrator, Jerry Bair, testified that Sundale did not discharge all its Native American employees and that three Native Americans were currently employed at Sundale. Mr. Bair acknowledged one Native American was discharged for insubordination in the heat of a union organizing campaign, one was a temporary summer employee who left at the end of summer, and one was fired for excessive absenteeism.

■■■ In Syllabus Point 2 of *Dobson v. Eastern Associated Coal Corp.,* 188 W.Va. 17, 422 S.E.2d 494 (1992), we stated:

> " 'Disparate impact in an employment discrimination case is ordinarily proved by statistics[.]' Syl. pt. 3, in part, *Guyan Valley Hospital, Inc. v. West Virginia Human Rights Commission,* 181 W.Va. 251, 382 S.E.2d 88 (1989)."

*See also* Syl. pt. 3, in part, *Dobson* ("it is not an abuse of discretion for the circuit court to allow the use of such statistical evidence if the defendant has the opportunity to rebut the same"). In this case, the plaintiff did not meet her burden of establishing the defendant's policy caused a disparate impact on a protected class. The plaintiff offered no statistical evidence comparing the protected class to the non-protected class and her anecdotal evidence concerning the other discharges was insufficient as a matter of law.

■■■ Thus, we fully agree with the defendant's conclusion that the plaintiff failed to establish a claim of disparate impact. The plaintiff's contention that the defendant's discharge decisions had a disparate impact does not adequately focus on a particular employment practice or policy. Moreover, even if the claim is narrowed to challenge only the defendant's rule that hitting a patient is *per se* a dischargeable offense, the plaintiff failed to show a disparate impact.[21] There is no basis in the record, logic, or common experience to suggest that a rule requiring automatic discharge of employees for hitting a patient would adversely affect Native Americans. In fact, it is so absurd that merely stating the contention gives cause to reject it.

### D. *Summary*

We find the plaintiff offered sufficient evidence of intentional discrimination for this case to be sent to the jury. While the evidence presented by the defendant might well demonstrate the decedent was terminated for reasons not related to gender, age, or ancestry, "this is a question better left for the jury to resolve." *E.E.O.C. v. Ethan Allen, Inc.,* 44 F.3d at 120. Accordingly, we conclude the circuit court properly denied the defendant's Rule 50 motion.

### III.

### *OTHER ASSIGNMENTS OF ERROR*

The defendant assigns several other errors: (1) the use of a special verdict form

---

21. The defendant also argues that even assuming the plaintiff established a disparate impact, Sundale proved a business necessity defense. While the defendant's proffered reason for the discharge—that the decedent hit a patient—is clearly a nondiscriminatory reason and is job related, we do not think this record warrants a conclusion that a *per se* discharge rule is necessary. A defendant can sustain the business necessity defense only by bearing the burden of proving through evidence (and not merely judicial intuition) that its challenged employment practice is not only related to its employees' ability to do the job in question, but also is necessary to achieve an important employer objective.

**490**

that failed to require the jury to make specific findings of discrimination, to separate economic and non-economic damages, and to permit damages for reasons other than for discriminatory discharge; (2) various instructional errors including improperly instructing the jury on the measure of damages, not instructing the jury on the defendant's right to discharge the decedent for violations of the defendant's personnel policy, and improperly instructing the jury on what constitutes discrimination; (3) improperly permitting the introduction of evidence on unsafe working conditions, discriminatory hiring, and affirmative action; and (4) the improper and prejudicial behavior of plaintiff's counsel during trial.

After conducting a careful review of the record and the briefs of the parties, we find only one of the defendant's remaining errors merits discussion.[22] The defendant contends that under the circumstances of this case the circuit court was required to submit a special verdict form to the jury, and the failure to do so constitutes reversible error.[23] We disagree.

■■■ As a general rule, a trial·court has considerable discretion in determining whether to give special verdicts and interrogatories to a jury unless it is mandated to do so by statute. *See* Syl. pt. 15, *Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 207 S.E.2d 897 (1974) ("[i]n absence of

statutory requirement, whether a jury shall be compelled to answer special interrogatories before arriving at a general verdict, is a matter resting in the sound discretion of the trial court."); *Torrence v. Kusminsky,* 185 W.Va. 734, 745, 408 S.E.2d 684, 695 (1991) ("[a]s is evident by the use of the permissive word may in ... [Rule 49(b)], whether to give special interrogatories to the jury is within the trial court's discretion"). Moreover, in *Teter v. Old Colony Co.,* 190 W.Va. 711, 720, 441 S.E.2d 728, 737 (1994), we quoted C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2506 at 498–500 (1971), for the following proposition with regard to Rule 49(a):

" 'The court has considerable discretion about the nature and scope of the issues to be submitted to the jury under Rule 49(a) so long as they present the case fairly. All material factual issues should be covered by the questions submitted. The court need not and should not, however, submit an issue that can be properly resolved as a matter of law. It is not error to refuse to put an issue that is adequately covered by other questions that have been put.' (Footnotes omitted)."

Thus, while we recognize there is a distinction between Rule 49(a) and Rule 49(b), this Court clearly has granted trial courts discretion in determining matters under both parts of the rule.

---

22. In some instances, we are unable fully to evaluate the defendant's arguments because the record is incomplete. Our prior decisions indicate the importance of a properly designated record. *See State v. Honaker,* 193 W.Va. 51, 454 S.E.2d 96 (1994); *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983); *State v. Nuckols,* 152 W.Va. 736, 166 S.E.2d 3 (1968); *State ex rel. Scott v. Boles,* 150 W.Va. 453, 147 S.E.2d 486 (1966). In fact, in note 4 of *State v. Honaker,* 193 W.Va. at 56, 454 S.E.2d at 101, we "serve[d] notice on counsel that in future appeals, we will take as nonexisting all facts that do not appear in the designated record and will ignore those issues where the missing record is needed to give factual support to the claim." Such is the case here.

23. Rule 49(a) of the Rules of Civil Procedure states:

"*Special verdicts.*—The court may require a jury to return only a special verdict in the form

of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

■ As a related matter, although we do not specifically cite Rule 49 in the opinion, we held in Syllabus Point 6 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984):

> "Where a jury returns a general verdict in a case involving two or more liability issues and its verdict is supported by the evidence on at least one issue, the verdict will not be reversed, unless the defendant has requested and been refused the right to have the jury make special findings as to his liability on each of the issues."

*See also Casteel v. Consolidation Coal Co.*, 181 W.Va. 501, 383 S.E.2d 305 (1989). We further stated in *Orr* that a trial court is not required to submit a special interrogatory or verdict form in every case where there are multiple causes of action. Such special interrogatories or verdict forms may be refused "[i]f the judge believes there is sufficient evidence to support jury consideration of the various causes of action[.]" 173 W.Va. at 350, 315 S.E.2d at 608. We concluded "only when the trial judge is specifically requested by the defendant to submit special findings and refuses to do so, and on appeal we conclude that one of the causes of action given to the jury is insufficient as a matter of law that a reversal will occur." 173 W.Va. at 350, 315 S.E.2d at 608.

■ In West Virginia, there appear to be three expansions to the general rule that special verdicts and/or special interrogatories are within the complete discretion of the trial court.[24] The first is where special interrogatories are compelled by statute, *e.g.*, *Mandolidis v. Elkins Indus., Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), *superseded by statute/rule as stated in Handley v. Union Carbide Corp.*, 804 F.2d 265 (4th Cir.1986), and its progeny. *See* Syl. pt. 2, *Smith v. Perry*, 178 W.Va. 395, 359 S.E.2d 624 (1987) ("[w]here not required by statute, special interrogatories in aid of a general verdict should be used cautiously and only to clarify rather than to obfuscate the issues involved" (Citation omitted)). The second is in cases involving multiple causes of action where at least one of the causes of action is not supported by sufficient evidence to make it a legitimate jury issue. The third expansion involves punitive damage cases. At oral argument, the defendant made it clear it was the second expansion upon which it relies. We do not believe any of the expansions apply to this case.

This is not a case where the plaintiff presented three claims or causes of action, *e.g.*, intentional discrimination, a *Harless*[25] claim, and breach of contract. Rather, it is a case in which the plaintiff used a combination of motives to prove one claim or cause of action.[26] What the defendant overlooks is that

24. "In most states and in the federal courts, the general rule is that the trial court has *complete* discretion whether a general or special verdict is to be returned and to answer interrogatories along with a general verdict. This discretion includes the determination of the form of the special verdict, provided it fully and fairly presents to the jury the issues of the case." Fleming James, Jr., Geoffrey C. Hazzard, Jr., & John Leubsdorf, *Civil Procedure* § 7.23 at 379–80 (4th ed. 1992). (Emphasis added).

25. *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978).

26. In a criminal context, the prosecutor is allowed some choice of theory, although the choice may be burdened with consequences, including those incident to the law of double jeopardy. Likewise, in a civil context, parties may be allowed some choice of motives or theories. But the choice in the civil context, although not as severe, also may be burdened with consequences. Because procedural law allows alternative contentions, parties to a civil action involving an array of factual and legal motives or theories should be allowed to defer their choice at least until late stages of the proceedings in the trial court. For example, both plaintiffs and defendants in a civil case may be allowed to maintain alternative contentions at least until the evidence is closed, when the circuit court should require a choice to be made as to the form of verdict to be used in submitting the case to the jury and instructions to the jury.

In fact, we believe the best way for a defendant such as Sundale to challenge the use of multiple theories or motives to support a single claim is by a motion requiring the plaintiff to elect which particular theory or motive the plaintiff wishes to pursue. When a party does not make a motion to elect, the party also makes a choice that has the associated consequence of almost certainly precluding the assertion of the assignment of error raised here. To be specific, the law (a procedural rule, in this instance) allows alternative theories or motives to be asserted, but, rather than allowing complete freedom of choice, the same rule also grants the trial court authority to

in cases such as this one the jury need not agree on a single legal theory or motive of intentional discrimination when more than one has been charged and submitted to it. The jury merely found the defendant guilty of intentional discrimination. Arguably, there was some evidence in support of all three motives. It certainly is not error to permit the plaintiff to use three different motives to prove the same thing, *i.e.,* intentional discrimination. That is especially true when a jury could reasonably find, as in this case, that the adverse employment decision resulted from a combination of illegal motives.[27]

■ Thus, the relevant question is whether it is acceptable to permit the jury to reach one verdict based on a combination of alternative findings. We are cited no authority suggesting that in civil rights cases where a general verdict is sought, the jurors should be required to agree on a single means by which the defendant committed intentional discrimination. To the contrary, we believe in employment discrimination cases a general verdict is valid so long as it is legally sup-

portable on one or more of the theories submitted, even though that gives no assurance that a valid theory rather than an invalid one is the basis for the jury's action. Although it would be preferable to give special verdict forms in multiple theory employment discrimination cases, which would remove doubt as to the jury's consideration of any alternative basis of liability that does not have adequate evidentiary support, the refusal to do so does not provide an independent basis for reversing an otherwise valid judgment.

■ What the defendant seeks is an expansion of *Orr v. Crowder, supra,* which was itself an expansion of the general rule. As we stated previously, the rule announced in *Orr v. Crowder, supra,* applies only to multiple causes of action and does not apply to cases where a combination of illegal motives are asserted to prove intentional discrimination. To the extent that a *per se* reversible error rule was announced in that case, we believe it should be limited to that specific situation and expansion of this rule is unwarranted.[28] If we followed the logic of the

---

make the plaintiff elect which theory or theories are worthy of jury consideration. Thus, when a motion to elect is properly and timely made, the circuit court not only has the authority to, but also has an obligation to require the plaintiff to make a choice as to which theory or theories he or she wants to present to the jury and have reviewed for sufficiency purposes on appeal. *See* John S. Ewart, *Waiver or Election,* 29 Harv. L.Rev. 724 (1916).

27. A trial court may in some circumstances allow submission to a jury of two or more theories, with appropriate instructions explaining the factual elements the jury must find to return a verdict sustaining each theory. The different theories submitted to a jury may be factually compatible—that is, a verdict sustaining all theories submitted may be permissible. For example, as in the present case, a plaintiff may claim the termination was triggered by a combination of motives. It is not unreasonable to believe that an employee could be terminated because she was an elderly Native American female. However, the evidence and the different theories of intentional discrimination submitted to a jury in a particular case may be so factually incompatible that the jury's choice is limited to finding one or another of the theories supported, but not all. We find no such incompatibility in this case.

28. Because the special verdict form throws off the "cloak of secrecy" surrounding the jury pro-

cess and enables the parties to see exactly what the jury has done, Edson Sunderland, *Verdicts, General and Special,* 29 Yale L.J. 253, 259 (1920), the liberal use of Rule 49(a) has been widely praised and condemned. Those who oppose it say the jury system should not be a scientific process:

"Rather, the jury's greatest value is that it applies the strict and sometimes harsh principles of law with the sense of justice of the 'man on the street.' Justices Hugo L. Black and William O. Douglas went even further, calling for the rejection of Federal Rule 49, and describing it as 'but another means utilized by courts to weaken the constitutional power of juries and to vest judges with more power to decide cases according to their own judgments.'"

Jack H. Friedenthal, Mary Kay Kane & Arthur B. Miller, *Civil Procedure* § 12.1 at 534 (2nd ed. Hornbook Series 1993). Considering the point expressed above, we believe a much more deferential approach is necessary when the challenge made is different than the one suggested in *Orr v. Crowder, supra.* Such deference to the trial judge is particularly appropriate in intentional discrimination cases where a combination of motives may be considered as the basis for liability. Indeed, giving the jury the requested special verdict forms could well have caused unnecessary confusion.

argument of the defendant, there would be no instances in which several acts or motives in the conjunctive are asserted as the basis for a claim that a special verdict form could be denied by the trial court. As the Supreme Court stated in *Griffin v. United States*, 502 U.S. 46, 59, 112 S.Ct. 466, 474, 116 L.Ed.2d 371, 382–83 (1991), "[j]urors are not generally equipped to determine whether a particular theory ... is contrary to law ... [but] *are* well equipped" to determine whether a particular theory is supported by the evidence. (Emphasis in original). In *Griffin*, the Supreme Court acknowledged it generally would be preferable to give the requested verdict forms, but the refusal to provide these to the jury is not alone a ground for reversal.

■ Concededly, there are some circumstances where a general verdict may so obscure the basis upon which a jury considering multiple theories finds liability that fundamental fairness will not permit upholding a verdict possibly based upon the unsupported theories. Under harmless error analysis, however, a verdict generally will be upheld even where the general verdict issue has been raised if by careful scrutiny of the record it is possible to ascertain with a high degree of probability that the jury did not rely upon the arguably unsupported theories. *See Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). In the present case, the defendant failed to convince the circuit court that the jury was misled by its instructions on intentional discrimination or that special verdict forms were necessary to prevent the jury from wrongfully deciding the case on improper grounds. Similarly,

deference is appropriate because the trial court is better able than an appellate court to decide whether the refusal to submit this case by special verdict forms affected any substantial rights of the defendant. We conclude the decision was the circuit court's call, and we find no abuse of that discretion.[29]

■ We do not say today that a circuit court cannot give special verdict forms which would help eliminate any doubt as to the basis of a jury's verdict. Indeed, we believe the giving of a special verdict form to the jury would have been preferable, but the refusal to do so does not provide an independent basis for reversing an otherwise valid judgment. Our holding is a limited one: When a jury returns a verdict based on a party's evidence charging several acts in the conjunctive, the verdict will stand if the evidence is sufficient with respect to any one of the acts charged even though a more specific verdict form was asked for and denied.

## V.

### CONCLUSION

For the aforementioned reasons, the judgment of the Circuit Court of Monongalia County is affirmed.

Affirmed.

---

**29.** The giving of special verdict forms is quintessentially a judgment call by the circuit court. Because the dynamics of a particular case "may be difficult to gauge from the antiseptic nature of a sterile paper record," *United States v. Passmore*, 984 F.2d 933, 937–38 (8th Cir.1993), our review must take into account " 'the ... [trier's] superior feel for the case.' " 984 F.2d at 936. (Citations omitted). Accordingly we will not lightly second-guess the extent of a circuit court's ruling under Rule 49(a) of the West Virginia Rules of Civil Procedure.