485 S.E.2d 695

**Ralph E. EVANS and Nellie S. Evans, Plaintiffs Below, Appellants,**

v.

**MUTUAL MINING, Defendant Below, Appellee.**

**No. 23550.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1997.

Decided April 11, 1997.

Robert Lee White, Madison, for Appellants.

Robert H. Sweeney, Jr., Jenkins, Fenstermaker, Krieger, Kayes & Agee, Huntington, Cheryl A. Keffer, Bastien & Gerwig, Charleston, for Appellee.

STARCHER, Justice:

Ralph E. and Nellie S. Evans appeal a jury verdict awarding them $5,000 for the damages they suffered when an impoundment of water under the control of Mutual Mining ("Mutual") inundated their property. On appeal, Mr. and Mrs. Evans allege the damage award was inadequate because of the circuit court's following errors: (1) exclusion of their testimony as owners of the value of their personal property, (2) exclusion of evidence of the concomitant damage which occurred on five other occasions, (3) exclusion of evidence of mental anguish, and (4) failure to grant a directed verdict on the issue of liability. Because we find merit in all the assignments of error except for the exclusion of evidence of mental anguish, we affirm, in part, reverse, in part, and remand this case, with directions.

I.

*Facts and Background*

On December 2, 1991, a sediment control cell located on the mountainside above the community of Madison Camp ruptured, sending water, mud and debris down the mountain and into Madison Camp. Mr. and Mrs. Evans are residents of Madison Camp and

their property was inundated.[1] Numerous items that the Evanses had stored in their garage were damaged or destroyed when the wash covered their property. The sediment control cell is/was part of the drainage structure for Mutual's surface mining operations on the mountainside above Madison Camp. Although Mutual undertook to remove the mud and debris from Madison Camp, the Evanses maintain that because of blocked drains and culverts resulting from the December 21, 1991 incident, additional flooding occurred in Madison Camp on June 29, 1992, July 2, 1992, July 24, 1992, March 24, 1993 and June 4, 1993.

Mr. and Mrs. Evans filed suit in the Circuit Court of Logan County seeking to recover damage to their personal property and real property, for mental anguish and annoyance and inconvenience. During discovery, a dispute arose about the value of the Evanses' personal property. As a result of a circuit court order, the Evanses were unable to present to the jury all damages their personal property had sustained. In addition, by partial summary judgment order, the circuit court excluded evidence of flooding and damage for all the alleged incidents except those two incidents (December 2, 1991 and March 24, 1993) in which Mutual had been cited for failing to protect off site areas by the W.Va. Department of Environmental Protection. Because the Evanses' claim was limited to property damage, the circuit court also excluded damages for mental anguish.

The issue of Mutual's liability was submitted to the jury, which found Mutual liable and returned the following awards for the Evanses: "$1000.00 Damages to Personal property[,] $3000.00 Damages to Real property [and] $1000.00 Loss of use and annoyance and inconvenience." After the circuit court denied the Evanses' motion for either judgment notwithstanding the verdict or a new trial, the Evanses appealed to this Court alleging the circuit court made several errors.

## II.

### *Discussion*

#### A.

##### *Owners' Opinion of the Value of Personal Property*

Mr. and Mrs. Evans maintain that their opinion of the value of their personal property was erroneously excluded. During discovery, the Evanses produced a handwritten list of their property that was destroyed/damaged and assigned a value to each item. The list was extensive because the garage where the Evanses had stored some of their personal property had been flooded during the incidents. According to Mr. Evans, the damaged property included: equipment from their recently closed restaurant, camping equipment, off-season clothing and many other items. A dispute arose over whether the value assigned by the Evanses to their damaged property was the "fair market value," as requested by Mutual. During a deposition held on September 28, 1993, Mr. Evans testified that he had used catalogs to help him and that the values obtained from the catalog were "replacement values."

Arguing that "replacement values" were unresponsive to its request for "fair market values," Mutual sought a motion to compel, which was granted by the circuit court. Thereafter, the Evanses produced a second list in which the values of several of the items were reduced. However, most of the values noted on the second list remained unchanged. Mr. Evans also submitted his affidavit stating that none of the values noted on his second list was "a replacement cost." Mr. Evans acknowledged and listed the items which on the first list he had used a replacement value, but "[a]s to all other items on that [the first] list I had not replaced [sic] a replacement value but has assigned my opinion as to the fair market value."

Mutual, arguing that the values placed on the second list were unresponsive to the circuit court's order, moved to exclude the items that appeared on both lists with the same value. After a hearing, the circuit

---

**1.** Several other residents of Madison Camp filed complaints against Mutual Mining and the cases were consolidated. However, the Evanses were the only persons to appeal the circuit court's decision.

court excluded the items whose values had remained unchanged and refused to let the Evanses testify as to their value. The circuit court allowed the jury to consider items that appeared for the first time on the second list based on its finding "those [new items] to be arguably market value." According to the Evanses, the items excluded from the jury's consideration had a value of $9,756.99.

 Civil discovery is governed by the *West Virginia Rules of Civil Procedure*, Rules 26 through 37. "The Rules of Civil Procedure generally provide for broad discovery to ferret out evidence which is in some degree relevant to the contested issue. (footnote omitted)." *Policarpio v. Kaufman*, 183 W.Va. 258, 261, 395 S.E.2d 502, 505 (1990) (absence of compelling evidence of irremediable prejudice, writ of probation does not lie to bar trial based on pretrial discovery ruling). *Cf. Dishman v. Jarrell*, 165 W.Va. 709, 711, 271 S.E.2d 348, 349 (1980)("The rules of pleading are liberal and seek substantial justice"). Discovery disputes that must be resolved by the circuit court are addressed to the circuit court's sound discretion, and the circuit court's order will not be disturbed upon appeal unless there has been an abuse of that discretion. Syllabus Points 1 and 2 of *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127, *cert. denied*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985), state:

> The imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Syllabus Point 1, *Bell.*

> The striking of pleadings and the rendering of judgment by default against a party as sanctions under *W.Va.R.Civ.P.* 37(b) for that party's failure to obey an order of a circuit court to provide or permit discovery may be imposed by the court where it has been established through an evidentiary hearing and in light of the full

record before the court that the failure to comply has been due to willfulness, bad faith or fault of the disobedient party and not the inability to comply and, further, that such sanctions are otherwise just.

Syllabus Point 2, *Bell. Cf. State v. Delaney*, 187 W.Va. 212, 215, 417 S.E.2d 903, 906 (1992)(subject to a defendant's rights "to present evidence on his own behalf and to confront adverse witnesses, pretrial discovery is generally within the discretion of the trial court"); Syllabus Point 8, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983)("Subject to certain exceptions, pre-trial discovery in a criminal case is within the sound discretion of the trial court"); Syllabus Point 1, in part, *Nutter v. Maynard*, 183 W.Va. 247, 395 S.E.2d 491 (1990) ("trial judge does have discretion to compel 'discovery by other means' " in appropriate circumstances).

In this case, the circuit court found that the values placed by the Evanses on their personal property were not fair market values as a matter of law and excluded the Evanses from testifying about the value of certain items.[2] Normally, opinion testimony by a lay witness is limited to opinions rationally based on the witness' perception which are helpful for a clear understanding of the witness' testimony or a determination of a fact in issue. Rule 701 [1994] of the *West Virginia Rules of Evidence* states:

> If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

 Given the requirements for opinion testimony by a lay witness, we find that under Rule 701 [1994] of the *West Virginia Rules of Evidence*, the owner of destroyed or damaged personal property is qualified to give lay testimony as to the value of the

---

**2.** *See* Syllabus Point 5, *Stenger v. Hope Natural Gas Co.*, 139 W.Va. 549, 80 S.E.2d 889 (1954); Syllabus Point 4, *Adkins v. City of Hinton*, 149 W.Va. 613, 142 S.E.2d 889 (1965) (fair market value is the measure of damages for personal property).

personal property based on his or her personal knowledge. When the value of the personal property is disputed, the ultimate determination of the value of personal property must be resolved by the trier of fact.. As the owners of the destroyed personal property, the Evanses meet both the Rule 701 requirements to give their opinion concerning their personal property's fair market value and their testimony should not have been excluded. *See Royal Furniture Co. v. City of Morgantown,* 164 W.Va. 400, 263 S.E.2d 878 (1980) (operators of retail businesses with 30 years experience found to have special knowledge relative to the fair market value of the damaged items); *Spencer v. Steinbrecher,* 152 W.Va. 490, 497, 164 S.E.2d 710, 715 (1968) (owner may give opinion of "values of his own personal property, but he must, in order to avoid speculation, have enough experience to know values and be able to tell why"); Syllabus Point 7, *Stenger, supra* note 2 (owners of destroyed furniture and fixtures are qualified to give opinion even though their experience and knowledge as to values is very limited); Syllabus Point 14, *Tucker v. Colonial Fire Ins. Co.,* 58 W.Va. 30, 51 S.E. 86 (1905) (owner with sufficient knowledge to speak with intelligence may give opinion of value; the weight of his testimony is a question for the jury).

Our holding concerning personal property is similar to our long recognition that a landowner's opinion concerning the value of his or her land is admissible. *See Justice v. Pennzoil Co.,* 598 F.2d 1339 (4th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979)(landowner's opinion of the value of standing timber destroyed by the defendant admissible); *W.Va. Dept. of Highways v. Fisher,* 170 W.Va. 7, 289 S.E.2d 213, *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982) (in condemnation proceedings, owner may express his opinion concerning the value of his or her land); *W.Va. Dept. of Highways v. Sickles,* 161 W.Va. 409, 242 S.E.2d 567 (1978), *overruled on other grounds, W.Va. Dept. of Highways v. Brumfield,* 170 W.Va. 677, 295 S.E.2d 917 (1982) (landowner's opinion of value of land admissible); *Guyandot Valley Ry. Co. v. Buskirk,* 57 W.Va. 417, 50 S.E. 521 (1905) (opinion of persons residing near property to be condemned are admissible on question of value).

We find that the circuit court abused its discretion in excluding the opinion testimony of Mr. and Mrs. Evans concerning the fair market value of their destroyed personal property. The testimony of Mr. and Mrs. Evans should have been presented to the jury for resolution of the factual dispute concerning the value of the destroyed personal property.

B.

*Incidents of Flooding*

■ Mr. and Mrs. Evans maintain that after the December 2, 1991 flooding, their property was flooded six more times. On motion for summary judgment, the circuit court excluded the evidence that flooding had occurred in five of the six alleged additional incidents. Only the incidents where Mutual was cited by the W.Va. Division of Environmental Protection (December 2, 1991 and March 24, 1993) were submitted to the jury. Mr. and Mrs. Evans maintain because mud and debris from the December 2, 1991 flooding blocked the sewers and drains, the blockage caused the additional flooding, and they should have been allowed to present evidence of the damage caused by the incomplete clean-up.

■ "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). *See Williams v. Precision Coil, Inc.* 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995). Our traditional principle for granting summary judgment is stated in Syllabus Point 3 of *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of N. Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963):

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syllabus Point 1, *Croston v. Emax Oil Co.,* 195 W.Va. 86, 464 S.E.2d 728 (1995); Syllabus Point 1, *Williams, supra;* Syllabus Point 2, *Painter, supra. See Williams, su-*

pra and *Painter, supra* for discussions of the principles for granting summary judgment.

■ Rule 56(c) of the *West Virginia Rules of Civil Procedure* permits judgment to be entered when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Syllabus Point 3 of *Williams, supra* states:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

In this case, the moving party did not support its motion by affirmative evidence showing there was no genuine issue of material fact concerning the flooding of May 19, 1992, June 29, 1992, July 22, 1992, July 24, 1992 and June 4, 1993. The circuit court erred in finding that only a citation by the W.Va. Division of Environmental Protection was evidence of Mutual's liability for the flooding in Madison Camp. Based on our review of the record, we find there was a genuine issue of material fact concerning the cause of the flooding for the additional five dates and therefore, we reverse that portion of the summary judgment order. Under these circumstances the issue of the cause of additional flooding incidents and any resultant damage should have been presented to the trier of fact for resolution of the factual dispute.

### C.

#### Mental Anguish

■ Mr. and Mrs. Evans also claim damages from mental anguish for their property damage. Without citing any case law, the Evanses maintain that because they feared for their lives when the mud, water and debris washed down the mountain on December 2, 1991, they are entitled to damages for mental anguish. In Syllabus Point 3 of *Jarrett v. E.L. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977), we noted that "[a]nnoyance and inconvenience can be considered as elements of proof in measuring damages for loss of use of real property." *In accord Kirk v. Pineville Mobile Homes, Inc.*, 172 W.Va. 693, 310 S.E.2d 210 (1983). In *Jarrett*, property owners brought suit for damages arising from the destruction of their well, and although we allowed damages for annoyance and inconvenience, damages for mental anguish were not allowed. Our determination to allow recovery for annoyance and inconvenience was because "these considerations ... [could be] measured by an objective standard of ordinary persons acting reasonably under the given circumstances. (citation omitted)." *Jarrett*, 160 W.Va. at 404, 235 S.E.2d at 365. In *Jarrett, id.*, we were "not prepared to allow recovery for mental pain and suffering." [3]

In this case because Mr. and Mrs. Evans fail to offer any reason to depart from *Jarrett*, we affirm the circuit court's decision to exclude damage for mental anguish in this property damage case.

### D.

#### Strict Liability

Finally, Mr. and Mrs. Evans maintain that the circuit court erred in failing to grant them a directed verdict on the issue of liability. Mutual maintains that this issue is moot because "the jury found Mutual negligent for causing the Appellants' damage" in the December 2, 1991 flooding.

■ We have long held that "where a person chooses to use an abnormally dangerous instrumentality he is strictly liable without a showing of negligence for any injury proximately caused by that instrumentality." *Peneschi v. National Steel Corp.*, 170 W.Va. 511, 515, 295 S.E.2d 1, 5 (1982). In Syllabus

---

**3.** Our opinion today does not foreclose a recovery for mental anguish in a case where only property is damaged. The circumstances in this case come close, but we have insufficient evidence of whether, using an objective standard, an ordinary person would have feared for his or her life when the water rupture came down the mountainside and into the community.

Point 1 of *Peneschi,* we adopted a strict liability theory for abnormally dangerous instrumentality by stating:

> *Fletcher v. Rylands,* 3 H. & C. 774, 159 Eng.Rep. 737 (1865), *rev'd Fletcher v. Rylands,* L.R. 1 Ex. 265 (1866), *aff'd Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868), as articulated in the *Restatement (Second) of Torts* (1976) is hereby adopted into the common law of this jurisdiction.

In *Peneschi,* 170 W.Va. at 516–17, 295 S.E.2d at 6–7, one of the sections we quoted from *Rylands* said:

> We think that the true rule of law is that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape.

In the present case, Mutual, for its mining purposes, collected water in a sediment pond on a mountain overlooking a community. The water and other material in the sediment pond were likely to do mischief if it escaped. When the sediment pond escaped on December 2, 1991, Mutual became *prima facie* answerable for all the damage. A similar incident arose in *Weaver Mercantile Co. v. Thurmond,* 68 W.Va. 530, 70 S.E. 126 (1911) in which a large wooden tank containing water for the defendant's hotel burst and flowed into the plaintiff's store. In *Weaver,* we said: "If the person whose duty it was to keep the tank in good repair had not been negligent in some respect, the tank would not have burst." *Weaver,* 68 W.Va. at 532, 70 S.E. at 127. Our reasoning in both *Peneschi* and *Weaver* is based on the refusal to shift liability away from the entity that profits from the abnormally dangerous activity.

We find that the circuit court should have found Mutual strictly liable for the damages suffered by the Evanses when the sediment pond broke sending water, mud and debris down the mountain and any sequel thereof.

### III.

### *Conclusion*

For the above stated reasons, the circuit court's decision is affirmed, in part, reversed, in part, and remanded, with directions. On remand, the circuit court is directed to conduct a new trial limited solely to the issue of damages. In the new trial, Mr. and Mrs. Evans should be permitted to offer their own opinion as to the fair market value of all their destroyed/damaged personal property. Any factual dispute as to the value of the personal property is for jury resolution. To the extent that the December 2, 1991 flooding/cleanup caused additional flooding on subsequent dates because of blocked drains and culverts, evidence of such damage is to be submitted to the jury. Although damages for mental anguish are not appropriate in this case, the jury can consider annoyance and inconvenience for all the incidents caused by Mutual. Finally, the jury is to be instructed that Mutual is strictly liable for all damage caused by the rupture of its sediment pond, including additional incidents of flooding caused by the original flooding.

Based on the foregoing, the decision of the Circuit Court of Logan County is affirmed, in part, and reversed, in part, and this case is remanded with directions.

Affirmed, in part, reversed, in part, and remanded.