516 S.E.2d 275

**Charles E. SMITH and Annette Smith, his wife, Plaintiffs below, Appellants,**

v.

**SEARS, ROEBUCK AND CO., a New York corporation doing business in West Virginia; Gregory Bond, as store manager of Sears, Roebuck and Co.; and Gregory Bond, individually, Defendants below, Appellees.**

No. 25365.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1999.

Decided May 19, 1999.

Rudolph L. DiTrapano, Esq., Sean P. McGinley, Esq., DiTrapano, Barrett & DiPiero, Charleston, West Virginia, Thomas G. Wilson, Esq., Wilson Law Offices, Charleston, West Virginia, Attorneys for Appellants.

Steven C. Hanley, Esq., Kay, Casto, Chaney, Love & Wise, Charleston, West Virginia, Attorney for Appellees.

PER CURIAM:

The appellant and plaintiff[1] below, Charles E. Smith ("Smith"), appeals the entry of summary judgment by the Circuit Court of Kanawha County in favor of the appellees and defendants below, Sears, Roebuck and Company ("Sears") and Gregory Bond ("Bond"), a Sears store manager.

Smith sued the appellees, claiming, *inter alia*, that the appellees violated the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1 to –20, by engaging in age discrimination. The circuit court found that Smith had failed to establish a *prima facie* claim for age

discrimination, and entered summary judgment in favor of the appellees. Smith contends that the circuit court erred in granting summary judgment. Following our review of the record and applicable law, we find that the circuit court did not err in granting summary judgment, and accordingly we affirm.

## I.

In December of 1991, appellant Smith was employed as a commissioned salesperson in the Sears appliance department. Smith had been employed by Sears for 31 years and had an exemplary work record.

On December 28, 1991, Smith engaged in a heated argument with a fellow employee, Mr. Patton, while both were working at Sears. Smith and Mr. Patton left the sales floor and went outside to the parking lot to continue their discussion. Smith contends that he went outside with Mr. Patton to settle him down where no customers were present.

A physical altercation occurred between the two men once they were in the parking lot. There were no witnesses to the altercation. Smith contends that he was attacked by Mr. Patton, and did not retaliate, but instead reported the incident to the Sears department manager before going to the hospital to receive treatment for his injuries. Mr. Patton stated that when he and Smith went outside, Smith grabbed Mr. Patton by the neck.

Sears conducted an inquiry into the altercation. The inquiry resulted in both Smith and Mr. Patton being terminated from their employment with Sears. Both Smith and Mr. Patton were over the age of 50 and were receiving full benefits when they were terminated. Sears replaced both Mr. Patton and Smith with employees under the age of 40 who were not entitled to receive such benefits.

Smith sued Sears in the Circuit Court of Kanawha County on September 14, 1992, al-

---

1. The wife of Charles E. Smith, Annette Smith, joined her husband in the complaint filed against the defendants below and claimed a loss of consortium. Summary judgment was also entered dismissing Annette Smith's claim. Annette Smith did not appeal the dismissal of her consortium claim.

leging various causes of action,[2] including age discrimination under the West Virginia Human Rights Act, *W.Va.Code,* 5–11–1 to –20.

By order dated March 16, 1998, the circuit court granted the defendants' motion for summary judgment on Smith's claims for age discrimination, breach of contract and loss of consortium. Smith appeals only the order of summary judgment on the claim of age discrimination.

## II.

We review the granting of summary judgment under the standard set forth in Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), where we held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" We have held that:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

Pursuant to Rule 56(c) of the *West Virginia Rules of Civil Procedure,* summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Accordingly, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). *In accord,*

Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992); Syllabus Point 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 3, *Evans v. Mutual Mining,* 199 W.Va. 526, 485 S.E.2d 695 (1997).

We have also held that:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syllabus Point 5, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995). *In accord,* Syllabus Point 2, *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997).

The party that moves for summary judgment "has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syllabus Point 6, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Consequently, summary judgment should be denied, "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Williams,* 194 W.Va. at 59, 459 S.E.2d at 336 (*quoting Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.1951)).

---

**2.** In his suit against Sears, Smith additionally made claims for breach of contract, loss of consortium, failure to provide a safe work place, negligent hiring and retention, defamation, false light, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of the covenants of good faith and fair dealing.

By order dated October 25, 1995, the Circuit Court of Kanawha County granted the defen-

dants' motion for summary judgment on Smith's claims of failure to provide a safe work place and negligent hiring and retention. By order dated December 19, 1995, the Circuit Court granted the defendants' motion for summary judgment on Smith's claims for defamation, false light, intentional infliction of emotional distress, negligent infliction of emotional distress and breach of covenants of good faith and fair dealing. Smith does not appeal these dismissals.

With these principles in mind, we turn to the issue in this case—whether the circuit court erred in granting summary judgment on Smith's age discrimination claim.

Smith contends that Sears engaged in age discrimination, in violation of the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1 to –20, when Sears terminated Smith's employment. We have stated that to successfully defend against a motion for summary judgment in a Human Rights Act discrimination claim, "the plaintiff must make some showing of fact which would support a prima facie case for his claim." Syllabus Point 2, *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986).

In Syllabus Point 3 of *Conaway* we defined the elements of a *prima facie* case for age discrimination as follows:

In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:

(1) That the plaintiff is a member of a protected class.

(2) That the employer made an adverse decision concerning the plaintiff.

(3) But for the plaintiff's protected status, the adverse decision would not have been made.

*In accord,* Syllabus Point 1, *Dobson v. Eastern Associated Coal Corp.*, 188 W.Va. 17, 422 S.E.2d 494 (1992); *West Virginia University v. Decker*, 191 W.Va. 567, 571, 447 S.E.2d 259, 263 (1994).

In the instant case, Smith satisfied the first two elements required by *Conaway.* Smith was over the age of 50 when he was terminated by Sears and thus was a member of a protected class as set forth in *W.Va. Code*, 5–11–3(k) [1998].[3] Additionally, Sears obviously made an adverse decision concerning Smith when Sears terminated his employment.

It is the satisfaction of the third requirement set forth in *Conaway*—whether the decision to terminate Smith was motivated by Smith's age—that is at issue here.

In addressing the third requirement of *Conaway,* this Court has stated:

The first two parts of the test are easy, but the third will cause controversy. Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of the protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

*Conaway* 178 W.Va. at 170–171, 358 S.E.2d at 429–430 (footnotes omitted).

In response to appellees' motion for summary judgment, Smith produced for the circuit court a transcript of a surreptitiously recorded telephone conversation that Smith allegedly had with Carl Blackburn, a retired Director of Human Resources for Sears. Blackburn had assisted the management of Sears in the investigation of the altercation between Smith and Mr. Patton. During this conversation, Mr. Blackburn speculated that Smith might have been fired to protect Sears from the potential of an age discrimination suit by Mr. Patton, who was substantially older than Smith. Mr. Blackburn hypothesized that if Sears had fired Mr. Patton but not Smith, Sears would be exposing itself to a lawsuit.[4]

---

3. *W.Va.Code, 5–11–3(q) [1981], in effect when the* altercation occurred, provided that: "The term age means 'age' forty through sixty-five, both inclusive[.]" *W.Va.Code,* 5–11–3 was rewritten in 1992 and 1998. The applicable provision is

now denominated as subparagraph (k), and provides: "The term 'age' means the age of forty or above[.]"

4. While Blackburn stated in the taped conversation that it was obvious that Smith had been

Smith also produced affidavits from several employees of Sears. These employees stated that they had observed Sears engage in practices that allegedly forced out older employees in favor of younger lower paid employees.[5]

Upon a review of the entire record we find that Smith failed to show any sort of nexus between Sears' decision to terminate Smith and a discriminatory reason. In the instant case, just as in *Conaway*, there was no admission made, no unequal treatment was alleged, and no statistics were presented. Smith did not provide evidence which would sufficiently link Sears' decision to terminate Smith and Smith's status as a member of a protected class so as to give rise to a *prima facie* inference that the decision was based on an illegal discriminatory criterion. *Conaway*, 178 W.Va. at 170–171, 358 S.E.2d at 429–430.

Construing the undisputed facts in a light most favorable to Smith, the evidence shows that Smith left the sales floor of his employer Sears, while he was scheduled to work, thereby neglecting his assigned duties. Sears conducted an investigation, and both men who left their positions that day were fired. Smith, as a member of a protected class listed under the *W.Va.Code*, 5–11–3(k) [1998], was not treated differently than the other employee who left his position. Smith failed to demonstrate a link between his termination and his age.

## III.

The judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

STARCHER, Chief Justice, dissenting.

I disagree with the majority's decision to affirm the summary judgment entered in favor of the defendants, and so I respectfully dissent. Specifically, I do not agree with the majority's conclusion that the plaintiff failed to make a sufficient *prima facie* showing on an essential element of his age discrimination claim.

We have adopted a three-step "burden shifting" method of analyzing proof in discrimination cases. First, the plaintiff must make out a *prima facie* case of discrimination, by introducing evidence to suggest that an adverse employment decision was triggered by a consideration of improper factors such as age. Second, in response, the employer bears the burden of showing the employment decision was the result of a legitimate, non-discriminatory reason. Last, to be successful in his or her claim, the plaintiff must introduce evidence that the employer's proffered reason is a pretext rather than the true reason for the adverse employment decision.

We discussed this burden-shifting analysis in detail in *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), where we stated:

In a claim of intentional discrimination against a qualified individual with a disability, we apply a burden-shifting framework similar to that adopted in *McDonnell Douglas* [*Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ], *Barefoot* [*v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995) ], and *St. Mary's Honor Center v. Hicks*, 509 U.S.

punched, Blackburn went on to say that it could not be proven that Smith did not start the altercation by grabbing Patton and that Patton had not simply acted in self-defense. Blackburn conceded that theoretically, it would not be fair for two people to lose their jobs if only one of them was guilty; however, Blackburn also stated that because he could not decide who was telling the truth between Smith and Patton, both men would have to lose their jobs.

Blackburn also stated during the taped conversation that both Smith and Patton had left the

sales floor and were involved in an altercation which Blackburn felt constituted willful misconduct by both of the men.

5. However, co-workers of Smith stated in their depositions that it was their understanding and belief that Smith had been fired as a result of the altercation between Smith and Patton and that the age of Smith was not a factor in his termination.

502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Morris [Mem. Convalescent Nursing Home, Inc. v. West Va. Human Rights Comm'n,*], 189 W.Va. [314] at 317–18, 431 S.E.2d [353] at 357 [ (1993) ]. This method of proof permits a plaintiff to establish his or her prima facie case, which is in essence a rebuttable presumption of discrimination. *See ,Texas Dept. of Community Affairs v. Burdine* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981); *Barefoot,* 193 W.Va. at 487 n. 20, 457 S.E.2d at 164 n. 20. The burden of production then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions. In the unlikely event that the employer at this juncture remains silent, the unrebutted presumption compels the court to enter judgment for the plaintiff. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1091, 67 L.Ed.2d at 216; W.Va.R.Evid. 301. But once the employer meets this burden of production, the presumption raised by the prima facie case is rebutted, and the "inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95, 67 L.Ed.2d at 216. The *Barefoot/McDonnell Douglas* framework and its attendant burdens and presumption cease to be relevant at that point, and the onus is once again on the employee to prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747, 125 L.Ed.2d at 416.

198 W.Va. at 71–72, 479 S.E.2d at 581–82.[1]

The *Barefoot/McDonnell Douglas* framework places the burden first on the plaintiff to establish his *prima facie* case of discrimination. In Syllabus Point 3 of *Conaway* we defined the elements of a *prima facie* case for age discrimination as follows:

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:

> (1) That the plaintiff is a member of a protected class.

> (2) That the employer made an adverse decision concerning the plaintiff.

> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986).

The majority in the instant case correctly determined that the plaintiff satisfied the first two elements of his *prima facie* claim, as required by *Conaway.* The plaintiff is obviously a member of a protected class and he suffered form an adverse employment decision. However, I disagree with the majority's holding that the plaintiff failed to provide evidence sufficient to create a question of material fact concerning the third, "but for" element, set forth in *Conaway.*

We have held that "the 'but for' test of discriminatory motive in [*Conaway* ], is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." Syllabus Point 2, *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995).

To support the third element of his *prima facie* claim of discrimination, the plaintiff first demonstrated that he was replaced by a younger employee—notably, one who was ineligible for benefits.

Second, the plaintiff submitted the affidavit of Martha Major, an employee of Sears. Martha Major stated in her affidavit that:

> While I was employed in the appliance department, I observed that Sears appeared to be engaging in practices that forced out older, higher paid employees who then were replaced by younger employees who earned far less.

> Sears put these practices into effect by, among others, reducing commissions on appliances sold, in some cases up to fifty percent; reducing individual work hours; and, in general, making it very difficult for

---

1. As we stated in *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995), this three-step analysis is not a "minuet for ordering the proof at trial. Rather, it provides a framework for analyzing the evidence and facilitating a trial court's rulings on motions to dismiss and for directed verdicts." 193 W.Va. at 483 n. 10, 457 S.E.2d at 160 n. 10.

the senior employees to earn at the levels they previously enjoyed, forcing them to retire or find other employment.

Third, the plaintiff submitted the affidavit of Lawrence Summers, another Sears employee, who stated that:

> Based on my first hand experience working at Sears in Charleston, West Virginia, in the appliance department, it is my opinion that Sears was systematically forcing out older, higher paid employees in favor of younger, lower paid employees.

Both affidavits support the plaintiff's claim that Sears was engaged in employment practices that discriminated against Sears' older employees.

Both of these affidavits provide circumstantial evidence supporting the plaintiff's case. Circumstantial evidence can be just as reliable and powerful as direct evidence in a discrimination case.[2]

The plaintiff further supported his *prima facie* discrimination claim with powerful evidence tending to show that Sears' articulated reasons for firing the plaintiff were pretextual.

We have stated that "[i]n disparate treatment cases[3] under the West Virginia Human Rights Act, W.Va.Code, 5–11–9 (1992), proof of pretext can by itself sustain a conclusion that the defendant engaged in unlawful discrimination." Syllabus Point 5, in part, *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996). In other words, "[i]f the plaintiff has submitted credible evidence of the *McDonnell Douglas/Barefoot* prima facie case and enough evidence of pretext to create a question of fact, then the case should go to the jury. Pretext can be shown through either circumstantial or direct evidence." 198 W.Va. at 77, 479 S.E.2d at 587.

To demonstrate pretext, a plaintiff must demonstrate that "the employer did not act as it did because of its offered explanation." *Skaggs*, 198 W.Va. at 74, 479 S.E.2d at 584. The plaintiff in the instant case provided very substantial evidence of pretext sufficient to create a question of fact as to what Sears' real motive was for discharging the plaintiff.

Sears asserted that the plaintiff was dismissed from his employment because the plaintiff was involved in an altercation with a fellow employee. Sears' assertion that the plaintiff was dismissed for a non-discriminatory reason thus met the burden placed on Sears by the burden-shifting framework of *Barefoot/McDonnell Douglas*.

To rebut Sears' assertion, the plaintiff provided a transcript of a telephone conversation that the plaintiff had with Mr. Blackburn,[4] and an affidavit from Mr. Jennings Womack, a retired Sears employee.

---

**2.** In a discussion of direct evidence versus circumstantial evidence in a discrimination case, we stated:

> We also emphatically reject the position that the burden shifts only when the plaintiff has established illicit motive through direct evidence, and we do so for several reasons. First, whether the plaintiff's proof is by direct or circumstantial evidence, or both, has nothing to do with the strength of her case; rather, the plaintiff's ability to produce direct evidence is completely accidental. Second, neither form of proof is necessarily more reliable than the other. Circumstantial evidence can be powerful, and direct evidence limp, and vice versa. Third, the direct-circumstantial distinction overlooks what the jury's role is in disparate treatment cases. Essentially, the jury is charged with the duty of recreating what in fact happened and whether the facts that did happen included intentional discrimination. Thus, if the jury reads the facts and concludes that the employee has proved that a discriminatory motive entered into the employer's deci-

> sion, it should not matter whether that conclusion was induced by direct or circumstantial evidence. Fourth, we are not convinced that the direct-circumstantial distinction is a viable or meaningful one. Obviously, several of the federal circuits have had a great deal of difficulty with it, and there are substantial authorities who conclude that there is no such thing as direct evidence "that involves neither a logical nor an inferential process." 1A John H. Wigmore, *Evidence In Trials At Common Law* § 26 at 959–60 (Peter Tillers ed.1983) (quoted in Zimmer, *supra*, at 614).

> *Skaggs*, 198 W.Va. at 76, 479 S.E.2d at 586 (citations omitted).

**3.** The term " '[d]isparate treatment' refers to cases in which a discriminatory motive produces an adverse employment action against the plaintiff." *Skaggs*, 198 W.Va. at 74, 479 S.E.2d at 584.

**4.** This telephone conversation was discussed more fully in the majority opinion.

Mr. Womack had been employed by Sears for 35 years prior to his retirement. Mr. Womack managed several Sears stores, served as Director of Personnel for the North Central Zone, and served as the Assistant Zone Manager for the North Central Zone.

Sears' Regional Manager asked Mr. Womack to assist in the investigation of the altercation between Smith and Mr. Patton. Following this investigation, Mr. Womack came to the conclusion that the Plaintiff had committed no offense "which gave Sears just cause to fire him." Mr. Womack stated that he was under the impression that other Sears employees, who had conducted the investigation in this matter, had agreed that Mr. Patton's account of the incident was not credible.[5]

The affidavit of Mr. Womack and the transcript of the telephone conversation with Carl Blackburn tended to show that the Sears employees who conducted the investigation determined that the plaintiff was innocent. This evidence thus tended to show that Sears' articulated reason—the plaintiff's alleged misconduct—was a pretext.

This evidence of pretext—combined with the plaintiff's age, the replacement by a younger employee, and the alleged climate of other age-discriminatory actions—surely created a question of material fact regarding Sears' motive for terminating the plaintiff.

It is painfully obvious that the plaintiff met his *prima facie* burden placed on him by *Barefoot/McDonnell Douglas*. This case should have been submitted to a jury for final resolution. Therefore, I respectfully dissent.

---

**5.** *The pertinent part of Mr. Womack's affidavit is as follows:*

9. Based on information provided, to me and my own conversations with the persons involved, I concluded, and was under the distinct impression that Mr. Denny, Mr. McMahon and Carl Blackburn, Director of Human Resources, agreed with me, that Mr. Smith had not committed an offense which gave Sears just cause to fire him. Instead, I concluded in my mind and was under the distinct impression that Mr. McMahon, Mr. Blackburn and Mr. Denny also concurred that Mr. Patton's account of the incident was not credible.

I am authorized to state that Justice McGRAW joins me in this dissent.

---

10. Disregarding this voiced opinion, Gregory Bond, Store Manager, nevertheless charged Charles E. Smith with willful misconduct and fired him along with Ora L. Patton.

11. I had advised Mr. McMahon and Mr. Deny that, in my opinion, the worst option would be to release Mr. Smith because there was no evidence that Mr. Smith had engaged in any willful misconduct or committed any serious offense and that firing Mr. Smith would place Sears in an untenable position. Nevertheless, Mr. Bond's decision was confirmed even though all parties, in my opinion, believed that Mr. Smith was an innocent victim.