UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GLENN ALLEN MILLER,
              *Plaintiff-Appellant,*

v.

TERRAMITE CORPORATION, a
corporation,
              *Defendant-Appellee.*

No. 03-2449

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, District Judge.
(CA-02-1386-2)

Argued: June 3, 2004

Decided: October 4, 2004

Before WILKINS, Chief Judge, WILLIAMS, Circuit Judge,
and David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by unpublished opinion. Senior Judge Hansen wrote the
opinion, in which Chief Judge Wilkins and Judge Williams joined.

---

## COUNSEL

**ARGUED:** Anne Elizabeth Shaffer, Charleston, West Virginia, for
Appellant. Cheryl H. Ledbetter, JACKSON KELLY, P.L.L.C.,
Charleston, West Virginia, for Appellee. **ON BRIEF:** Charles M.

Surber, Jr., Brian J. Moore, JACKSON KELLY P.L.L.C., Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

HANSEN, Senior Circuit Judge:

Glenn Allen Miller brought suit in state court alleging breach of contract, wrongful discharge on the basis of age and disability discrimination, and denial of retirement benefits against his former employer, Terramite Corporation (Terramite). Terramite removed the case to federal court on ERISA preemption grounds and moved for summary judgment. The district court granted summary judgment in favor of Terramite. Miller appeals, and we affirm.

I.

Because this is an appeal from the grant of summary judgment, we construe the evidence in the light most favorable to Miller, the non-movant appellant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Mereish v. Walker*, 359 F.3d 330, 332 (4th Cir. 2004). Miller began working at Terramite in 1994 as the paint shop foreman in a plant that manufactures compact tractor loader back hoes and street sweepers. He remained in this position for approximately two years. After Miller expressed concern about the possibility of contracting isocyanate poisoning from the paint, the company transferred him to the assembly hydraulic shop, where he worked for approximately three years. The company then transferred him to fill a need in the electrical department. Within a year, the company transferred him to the hydraulic cylinder department, where he remained until he was laid off at age 54 due to a general downsizing of the Terramite workforce in July 2001.

Miller suffered from some physical and mental impairments. He injured a knee at work, but states that the company permitted him to sit when a medical restriction required such an accommodation during his work in the electrical department. Miller said he was under no medical restriction when he was transferred to the hydraulic cylinder department. This job required a combination of standing and being seated at a desk, and Miller stated that his job was mostly at a desk making repair kits. Miller also suffered from diabetes and depression, for which he obtained treatment while he was employed with Terramite. Despite his ailments, he remained able to perform his job, and he worked continuously until his layoff.

Terramite's owners stated that the layoff decisions were based upon skill, seniority, and the recommendations of Jay Phillips. Phillips' recommendations were based on his subjective opinion of each employee's skill level as there were no employee performance evaluations or documentation of employee skills recorded at that time. Although a fellow employee, Charles Counts, testified in his deposition that Miller had been revered as the unofficial supervisor responsible for the cylinder department when the actual supervisor was on sick leave, Miller's skills and experience were limited. Miller had assembled repair kits, placed parts in individual bins, and performed some electrical work that the company had trained him to do. He had some painting experience, but he had expressed his dislike for that position by using a fear of illness to facilitate his transfer out of the painting department. Phillips recommended Miller's layoff without offering him any other position, and Miller was never recalled.

Miller asserts that his layoff was motivated by his age and disability. Miller's layoff occurred approximately one month short of his completing seven years with the company, and Miller asserts that Terramite knew he planned to retire soon. After laying Miller off, the company moved two younger employees into the hydraulic cylinder department, Paul Fisher and Chris Strickland. They were both under age 40, and each had less seniority than Miller. Phillips stated that he retained Fisher and Strickland because they had more skills than Miller and that skill levels played a bigger role in his decision than seniority. Two other hydraulics department employees laid off at the same time as Miller were both under the age of 40.

Miller filed a four-count complaint in the circuit court of Kanawha County, West Virginia, alleging the following: Count I, breach of contract; Count II, wrongful termination on the basis of age discrimination in violation of West Virginia law and public policy; Count III, wrongful termination on the basis of disability discrimination in violation of West Virginia law; and Count IV, that he was wrongfully denied 401K and other benefits by being terminated only 45 days before he would have been fully vested in Terramite's retirement plan. Terramite then removed this action to federal district court, asserting that Count IV stated a federal claim under ERISA.

On September 3, 2003, Terramite moved for summary judgment. On September 18, 2003, Miller opposed summary judgment on all but the contract claim, for which he sought dismissal due to his own failure to produce a genuine issue of material fact. Miller did not move to dismiss his ERISA claim that Terramite wrongfully denied him retirement benefits, in spite of the fact that discovery in August had revealed that Miller had received all he was due on the retirement account. Instead, in his opposition to summary judgment, Miller attempted to alter his ERISA argument, asserting that the claim for retirement benefits included a claim that Terramite discriminated against him with regard to the employee medical benefits plan because of the increased expenses he incurred to treat his diabetes and depression.

Over a month later, on Thursday, October 30, 2003, Miller sought to voluntarily dismiss the ERISA claim and to remand the entire action to state court. Two business days later, the district court granted summary judgment in favor of Terramite, treating the unopposed motion to dismiss the contract claim as a motion to amend under Rule 15 of the Federal Rules of Civil Procedure and noting that Rule 15 was the proper vehicle to accomplish a partial dismissal. The court granted the motion and dismissed the contract claim. The district court denied Miller's request for voluntary dismissal of the ERISA claim and for remand of the case to state court, "because it is untimely and would waste judicial resources." (J.A. at 191 n.2.) The district court then concluded that Miller had failed to raise a question of fact on the ERISA claim. Specifically, the court found no evidence that Terramite intended to deny Miller any employee benefits through the layoff and no evidence that Terramite had any information about

Miller's medical costs. The district court also concluded that the undisputed evidence raised no inference of either age or disability discrimination under the West Virginia Human Rights Act. Miller appeals.

## II.

### A.

Miller first challenges the district court's decision to deny his last-minute motion to voluntarily dismiss the ERISA claim and to remand the case to state court. Miller asserts on appeal that a Rule 41(a)(2) voluntary dismissal should have been granted because, "while not expressly stating so" (Appellant's Br. at 16), he intended to move for a dismissal of the ERISA claim with prejudice, and he asserts that a dismissal with prejudice should be freely given. Miller also contends that the district court abused its discretion by not dismissing the ERISA claim as it dismissed the contract claim, which the district court construed as a Rule 15 motion to amend.

We find no abuse of discretion, regardless of whether it is construed as an attempt to dismiss the action under Rule 41(a)(2) or as a motion to amend the pleading under Rule 15. A district court may dismiss an action with prejudice under Fed. R. Civ. P. 41(a)(2). *Choice Hotels Int'l, Inc. v. Goodwin and Boone*, 11 F.3d 469, 471 (4th Cir. 1993). In deciding a Rule 41(a) motion, a district court should consider factors such as "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal," as well as "the present stage of litigation." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996) (internal citations and quotation marks omitted).

Under Rule 15, the district court may grant a motion to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a). The district court does not abuse its discretion by denying leave to amend where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962);

*see also Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), *cert. denied*, 485 U.S. 977 (1988). These considerations are similar to those articulated above in the Rule 41(a) context. Because Rule 41(a)(2) provides for the dismissal of "actions" rather than claims, it can be argued that Rule 15 is technically the proper vehicle to accomplish a partial dismissal of a single claim, but similar standards govern the exercise of discretion under either rule. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1479 (2d ed. 1990); *see also Deasy*, 833 F.2d at 40 (noting that the "disposition of a motion to amend is within the sound discretion of the district court." ).

Under either rule, the district court did not abuse its discretion in concluding that Miller's attempt to dismiss the ERISA claim was untimely and would waste judicial resources. The motion came well after discovery had closed. Discovery was completed on July 30, 2003, and it revealed that the plaintiff had received all the retirement benefits to which he was entitled; thus leaving no evidentiary basis for his ERISA claim. This fact was emphasized in Terramite's motion for summary judgment, but Miller did not seek dismissal in light of that evidence nor did he assert conflicting facts. Instead, he attempted to alter his argument, claiming discrimination under ERISA due to his excessive medical costs — an argument that also lacked evidentiary support — and he waited over a month longer to seek dismissal of the ERISA claim altogether. By then, the district court had invested a great deal of time preparing a dispositive order and considering the merits of the claim. The dispositive order was filed only two business days after the motion to dismiss the ERISA claim. *See Davis v. USX Corp.*, 819 F.2d 1270, 1274 (4th Cir. 1987) (noting parenthetically that "denial of voluntary dismissal is appropriate where summary judgment is imminent") (citing *Pace v. S. Express Agency*, 409 F.2d 331, 334 (7th Cir. 1969)). Miller offered the district court no valid reason why his request for dismissal of the ERISA claim was not asserted in a more timely fashion. For the first time, he asserts in this appeal that the delay occurred because his own expert needed time to assess the validity of the discovery material, and he also asserts that "[w]hile not expressly stating so," he was asking the district court to dismiss the claim with prejudice (Appellant's Br. at 16.). The district court was not given the opportunity to address these assertions, and we will not entertain them for the first time on appeal absent a show-

ing of exceptional circumstances. *See Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances.").

B.

Miller asserts that even if the district court properly disposed of the ERISA claim on its merits in summary judgment, it should have remanded the remaining state law claims rather than exercising supplemental jurisdiction over them. A district court "shall have supplemental jurisdiction over all other" related claims in any civil action where the district court has original jurisdiction. 28 U.S.C. § 1367 (a) (2000). When the district court has dismissed the claims over which it has original jurisdiction, it "may decline to exercise supplemental jurisdiction," *id.* § 1367(c)(3). We review the district court's actions under § 1367 for an abuse of discretion. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting that district courts enjoy "wide latitude" in determining whether or not to retain jurisdiction). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.*; *Hinson v. Norwest Fin. S. C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001).

Miller asserts that the district court abused its discretion by not articulating its reasons for exercising supplemental jurisdiction. We find no abuse of discretion. Although the district court did not write a separate section dealing with the reasons supporting its decision to retain jurisdiction, such reasons are evident from the court's expression that Miller's request to dismiss the ERISA claim and to remand the entire case to state court would waste judicial resources. (J.A. at 191 n.2.) This reasoning supports the court's exercise of discretion in this instance.

C.

Finally, Miller asserts that the district court erred in granting summary judgment on the merits of his state law age and disability discrimination claims. We review the district court's grant of summary

judgment de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To set forth a prima facie case of age discrimination in West Virginia, a plaintiff must demonstrate (1) that he is a member of the protected class (which, in this case, consists of workers over age 40), (2) that the employer made an adverse employment decision as to him, and (3) but for the plaintiff's age, the employer would not have made the adverse decision. *Waddell v. John Q. Hammons Hotel, Inc.*, 572 S.E.2d 925, 927 (W.Va. 2002); *Conway v. E. Assoc. Coal Corp.*, 358 S.E.2d 423, 429 (W.Va. 1986). "What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of the protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Id.* at 429-30; *Smith v. Sears, Roebuck and Co.*, 516 S.E.2d 275, 279 (W.Va. 1999) (quoting *Conway*, 358 S.E.2d at 429-30). Thus, to determine whether a claim should survive a summary judgment motion, we must determine whether the plaintiff has adduced sufficient facts to create an inference that he experienced discrimination. *Conrad v. Ara Szabo*, 480 S.E.2d 801, 810 (W.Va. 1996).

Miller met the first two prima facie case requirements to state an age discrimination claim because he was over age 40, and Terramite laid him off work. As to the third requirement, the district court concluded that there was no evidence to support an inference of discrimination. This conclusion is supported by the undisputed evidence.

Miller cannot demonstrate an inference of age discrimination from his assertion that Terramite attempted to prevent his retirement benefits from vesting, because the undisputed evidence demonstrates that his only benefit had already fully vested, and he had collected it in its entirety after his layoff. The district court also cited *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993), for the proposition that ter-

minating an employee close in time to the vesting of a pension does not automatically give rise to an inference of age discrimination. Miller asserts that the district court erred by applying federal law rather than West Virginia law, but he points to no West Virginia case contradicting the principle enunciated in *Hazen Paper*. Moreover, contrary to Miller's assertion, the district court did cite West Virginia case law in its analysis of the age discrimination claim, and the court did not commit error by citing federal cases as supporting authority in this context.

Likewise, Miller cannot demonstrate an inference of age discrimination from the mere fact that younger workers with less seniority were retained. The district court noted that the two workers who moved into the cylinder department after Miller was laid off "knew how to perform every job in the department and could assemble the entire hydraulic cylinder, jobs Miller could not do." (J.A. at 197.) Miller does not contest this statement of fact. Additionally, the district court stated that the evidence showed that these two workers "could perform almost any job at Terramite while Miller's job skills were limited." (*Id.*) The record supports the district court's conclusion that there was no inference of age discrimination because the company retained younger employees who were able to perform more jobs within the company than the plaintiff.

Furthermore, the statistical data indicated that 40 workers were laid off in July 2001 and only 9 workers (22.5 percent of those laid off) were over the age of 40. In Miller's department, 3 were laid off — Miller was over 40, but the other two were not. Statistics further show that after the layoff the average age of employees increased from 36.5 to 36.7 years old. The workforce data does not give rise to an inference of discrimination.

As to Miller's disability claim, he asserts that the district court erred by not considering his knee injury. We respectfully disagree. The district court concluded that Miller had not demonstrated that either his diabetes or depression affected a major life activity, but the court refused to consider the knee condition because Miller had not raised this as a disabling condition until his response in opposition to the motion for summary judgment. The district court correctly concluded that this was untimely and that the opposing party would be

prejudiced by inadequate notice if this claim were considered in opposition to the summary judgment motion. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (noting the complaint must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Even if the claim had been properly pled or added by amendment to the complaint, summary judgment would be proper. To state a claim of discriminatory discharge on the basis of a disability, the plaintiff must demonstrate, among other things, that he or she is a person with a disability as defined in the state law. *Hosaflook v. Consol. Coal Co.*, 497 S.E.2d 174, 179 (W.Va. 1997).\* The West Virginia Human Rights Act defines disability as "[a] mental or physical impairment which substantially limits one or more of such person's major life activities. The term 'major life activities' includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." W.Va. Code § 5-11-3 (m). A disability may also be found where the person has a record of such impairment or is regarded as having such an impairment. *Id.*

In Miller's deposition testimony he states that when he was working in the electrical department, his doctor requested that he stay off his feet as much as possible. Terramite provided Miller with a chair so he could perform his tasks in a seated position. Later that year, however, when he was transferred to the hydraulics cylinder department, Miller states that his job mostly permitted him to sit, but he was no longer under a restriction from his doctor. (J.A. at 267.) He testified that there were no other light duty issues that came up as a result of medical restrictions. (*Id.*) Miller's own testimony thus indicates that he was under no medical restriction at the time of his layoff, and he provides no testimony to indicate that the knee condition substantially limited any major life activity. Construing the record in the light most favorable to Miller, he failed to state a claim that he was a person with a disability within the meaning of state law.

---

\*In *Hosaflook*, the court uses the word "handicap." The West Virginia Human Rights Act now uses the term "disability," but the courts have clearly indicated that "[t]he terms 'handicap' and 'disability' are interchangeable." *Stone v. St. Joseph's Hosp. of Parkersburg*, 538 S.E.2d 389, 398 n.12 (W.Va. 2000).

### III.

Accordingly, we affirm the judgment of the district court.

*AFFIRMED*